THE PEOPLE *ex rel.* BRENDA WILLIAMS, Plaintiff-Appellee, v. ALTON ISADORE SAM WILLIAMS, Defendant-Appellant.

First District (1st Division)   No. 86—0277

Opinion filed April 13, 1987.

John F. O'Meara, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Amanda Toney, Assistant State's Attorney, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Alton Isadore Sam Williams, appeals from the order of the circuit court of Cook County finding him in wilful contempt of court for failure to pay child support. On appeal, he contends that (1) he was denied due process because he did not receive notice on the contempt hearing; (2) the trial court improperly reversed the burden of proof on the issue of his present ability to pay child support and the court improperly imprisoned him for nonpayment of a debt; and (3) his failure to obtain employment did not amount to contempt. We reverse and remand.

The record reveals the following facts. Defendant and his ex-wife, Brenda Williams, were married on October 14, 1972. They had two children, one born in 1970, the other in 1973. Defendant and his wife stopped living together in 1974, but a judgment for dissolution of marriage was not entered until July 15, 1980. That judgment required, *inter alia*, that defendant pay as child support 30% of his net income when employed, and $150 per month when unemployed.

On May 2, 1984, Mrs. Williams filed a petition for rule to show cause against defendant for failing to pay child support as required by the judgment of the court. On June 4, 1984, the court continued the case to allow defendant to bring in his W-2 forms from 1983 and his tax returns from 1980 through 1983, inclusive.

On July 11, 1984, defendant filed a petition to modify the order of support. On the same date, the court found defendant in wilful contempt of court and sentenced him to 60 days in the House of Corrections. The court provided that defendant could purge himself of contempt by remaining current in his payments. On the same day, the court entered an order withholding from defendant's income $150 per month for current support, $100 per month on an arrearage of $7,350, and $25 per month on the delinquency until paid in full.

On September 28, 1984, the court held that defendant had purged himself of contempt by paying Mrs. Williams $250 per month for July, August, and September of 1984. The court vacated those paragraphs of the July 11 order holding defendant in contempt and continued the case to January 23, 1985, for a report on status.

On January 24, 1985, the court found that on September 28, 1984, defendant was purged of contempt; that defendant failed to appear in court on January 23, 1984; and that support and withholding orders were entered on July 11, 1984. The court then ordered the matter off of the call.

On March 20, 1985, defendant filed a petition to modify the order of support of July 11, 1984. He stated that on September 16, 1984, he lost

his job, thus his only source of income was unemployment compensation at $500 per month. Thereafter, on April 11, 1985, the court temporarily abated the child-support payments during April and May of 1985. The court ordered defendant to produce a job application diary and evidence of the status of his appeal from his termination from his job and continued the matter to June 10, 1985.

On June 10 defendant was not present in court. The court ordered defendant, through his attorney, "to bring back [his] Job Diary," and continued the cause to August 19, 1985. The court further ordered defendant to appear on that date or it would issue a writ of attachment.

On August 19, 1985, the court issued an attachment order, which it then quashed and recalled on motion of defendant's attorney, who explained that defendant was hospitalized. The court continued the case to September 18, 1985.

On September 18 defendant again failed to appear in court. The court issued an attachment order to be heard on a rule to show cause, although the State had not filed a petition for a rule. On October 3, 1985, defendant filed a motion to recall the warrant and to set the case for a hearing. On the same day, the court quashed and recalled the attachment order and continued the cause to January 22, 1986.

On January 22, the trial court held a hearing. The assistant State's Attorney, representing Mrs. Williams, stated the following: that the matter was before the court on a rule to show cause which was entered May 2, 1984; that the case had been continued six times since that date for defendant to produce job diaries and to prove that he was hospitalized on the days that he did not appear in court; and that defendant was approximately $6,400 in arrears. The State asked the court to hold defendant in wilful contempt of court and to pay as ordered.

Defendant's attorney, who disputed the State's recitation of the record, stated the following: that the case was not in court on a rule to show cause; that there had been an order changing the amount of support payments; and that in April defendant had filed a petition to modify the support payments, which was never ruled upon. After denying defense counsel's request for a continuance to allow defendant to produce his job diary and his records, the following dialogue took place:

"THE COURT: No. It has been continued. We will go to hearing today.

MR. O'MEARA [DEFENSE COUNSEL]: I have asked for a ruling on the modifications, on our petition.

THE COURT: Is that all the testimony you have? I will rule on your motion.

MR. O'MEARA: I'm not resting.

MR. ADAMS [ASSISTANT STATE'S ATTORNEY]: The State would ask the Court to take notice of the rule to show cause, entered May 2, 1984.

THE COURT: I will take notice of the petitions and orders entered in the file. Call your first witness. Who do you wish to call?"

At the hearing, both defendant and Mrs. Williams testified. During Mrs. Williams' testimony, the court stated that the relevant testimony was that which occurred after July 11, 1984, because on that date defendant had been found in contempt of court. Thus, payments prior to July 11 would have been recorded in the previous arrearage.

Defendant testified to the state of his affairs, his attempts to obtain employment, and his medical problems. He produced no records. The court denied him leave to bring in records concerning his employment search.

In his closing statement, the assistant State's Attorney alleged that during the period from July 11 until the present, January 22, defendant had expenses far exceeding his income. The State then asked the court to find defendant in wilful contempt of court.

The court found the following: that defendant was $6,450 in arrears; there was no corroborating evidence of defendant's medical problems; there was no evidence as to defendant's being on public assistance; there was no job diary, nor were there addresses, dates or names of interviewers; there were no copies of resumes; and defendant was totally lacking in credibility and was in wilful violation of previous court orders. The court also found that absent from the record was evidence of actual income, expenses, and earnings. Therefore, the court concluded that in the past defendant had been able to pay all amounts due and that presently he was able to pay all amounts which had become due.

Without ruling on defendant's motion to modify the support order, the court found defendant in wilful contempt of court and sentenced him to 90 days' work release, with the opportunity to purge himself of contempt by either full payment of the arrearage or by obtaining a job which would allow him to pay at least $600 per month on the arrearage.

Defendant contends that he was denied due process because he did not receive notice of the January 22, 1986, contempt hearing. He asserts that at that hearing he was surprised that the State argued that he was in contempt of court as he received no notice that they would so argue. He was under the impression that the hearing was as to his motion to modify the order for support, which had been continued several times since March 20, 1985.

442

In response, the State argues in its brief that a rule to show cause was served on defendant in May 1984. The State maintains that the matter was not finally adjudicated, but was continued several times to allow defendant to produce evidence of his inability to pay the arrearage. The State does not directly address defendant's argument that he was already found in contempt on the May 1984 rule to show cause and was purged of that contempt finding. Nor does the State respond to defendant's allegation that a new rule was necessary for the subsequent finding of contempt by the trial court.

During oral argument in this court, however, the State conceded that the only motion which was pending before the trial court was defendant's petition to modify the support order. Further, the State submitted that the trial court found defendant in direct, rather than indirect, contempt on January 22, thus defendant was not entitled to notice of the contempt hearing on that date.

■■ ■ Indirect contempt of court occurs when the contemptuous act, or an essential part of it, occurs outside the presence of the court. Direct contempt occurs when either the judge personally observes the contemptuous act or the act is not witnessed by the judge but "take[s] place in an integral or constituent part of the court and [is] thereby deemed to have occurred in the constructive 'presence of the court.' " *People v. Javaras* (1972), 51 Ill. 2d 296, 299, 281 N.E.2d 670.

■■ ■ Civil contempt has as its purpose to coerce obedience to a court order, ordinarily for the benefit of an opposing party (*Sullivan v. Sullivan* (1973), 16 Ill. App. 3d 549, 306 N.E.2d 604), whereas criminal contempt "has been generally defined as conduct which is calculated to embarrass, hinder or obstruct a court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into disrepute" (*People v. Javaras* (1972), 51 Ill. 2d 296, 299, 281 N.E.2d 670).

■■ ■ In a proceeding to punish for indirect contempt, a defendant is guaranteed due process. "[T]he alleged contemnor must be informed of the charges against him by information, notice, citation, or rule to show cause, and he must be given an opportunity to file an answer***." (*People v. Javaras* (1972), 51 Ill. 2d 296, 300, 281 N.E.2d 670.) Furthermore, in order to find a defendant guilty of indirect contempt of court, "due process requires that the defendant [not only] be advised of the charges, [but also] be accorded a fair hearing, and be permitted representation by counsel." *People v. Edwards* (1979), 69 Ill. App. 3d 626, 628-29, 387 N.E.2d 969, citing *In re Oliver* (1947), 333 U.S. 257, 92 L. Ed. 682, 68 S. Ct. 499, and *People v. Jashunsky* (1972), 51 Ill. 2d 220, 282 N.E.2d 1, *cert. denied mem. sub nom. Caref v. Illinois* (1972), 499

U.S. 984, 34 L. Ed. 2d 249, 93 S. Ct. 333, *and cert. denied Jashunsky v. Illinois* (1972), 409 U.S. 989, 34 L. Ed. 2d 256, 93 S. Ct. 332.

■ In the case at bar, defendant was held in indirect civil contempt of court. The alleged contempt, failure to pay child support, was indirect because it occurred out of the court's presence. It was civil contempt because its purpose was to coerce defendant to pay child support. Defendant, however, was denied due process because he did not receive notice that the hearing on January 22 would concern his alleged contempt.

The only rule to show cause was filed on May 2, 1984. Subsequently, on July 11, 1984, defendant was held in contempt of court and thereafter purged of contempt on September 28, 1984. The State filed no new rule to show cause. None exists in the record, nor did the State argue that a second rule was ever filed. In fact, at the January 22 contempt hearing, the State referred back to the May 1984 rule as the pending rule to show cause. Moreover, the State now concedes that no rule was pending before the trial court.

■ In addition, the fact that defendant was allowed to cross-examine Mrs. Williams and to testify himself did not cure the due process violation; for, as our supreme court has stated:

"Being given only the opportunity to testify in one's own behalf and to cross-examine witnesses falls short of satisfying the requirement that the accused by [*sic*] given an opportunity to be heard and to defend. [Citations.]" *People v. Jashunsky* (1972), 51 Ill. 2d 220, 225, 282 N.E.2d 1, *cert. denied mem. sub nom. Caref v. Illinois* (1972), 499 U.S. 984, 34 L. Ed. 2d 249, 93 S. Ct. 333, *and cert. denied Jashunsky v. Illinois* (1972), 409 U.S. 989, 34 L. Ed. 2d 256, 93 S. Ct. 332.

See also *People v. Pincham* (1976), 38 Ill. App. 3d 1043, 350 N.E.2d 67.

Because we find that defendant received no notice of the January 22, 1986, contempt hearing, that the contempt issue was not properly before the court that day, and that the only motion pending was defendant's petition to modify the order of support, we need not address the remaining two issues.

Accordingly, the order sentencing defendant to 60 days in the House of Corrections is reversed and the cause is remanded for further appropriate proceedings.

Reversed and remanded.

QUINLAN, P.J., and BUCKLEY, J., concur.