NORELL SANDERS, Petitioner-Appellee, v. O.D. SHEPHARD, a/k/a Odell Shephard, Respondent-Appellant.

First District (4th Division) Nos. 1—87—3631, 1—88—2070, 1—88—2100, 1—88—3714 cons.

Opinion filed June 22, 1989.

Steven E. Glink, of Chicago, for appellant.

Joan S. Colen and Cathleen Cohen, both of Legal Assistance Foundation, of Chicago, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

O.D. Shephard (Shephard) appeals from three successive contempt orders entered November 19, 1987 (docket number 87—3631), May 17, 1988 (docket numbers 88—2070 and 88—2100), and November 18, 1988 (docket number 88—3714). Each of these contempt orders directed Shephard's imprisonment for six months or until he returns his biological daughter, Deborah Sanders (Deborah), to the custody of the child's natural mother, Norell Sanders (Sanders). The contempt orders resulted from Shephard's failure to comply with the trial court's October 16, 1987, plenary protection order that Shephard return the child to her mother. The trial court entered this plenary protection order, following a hearing, pursuant to a petition filed by Sanders under the Illinois Domestic Violence Act of 1986 (Ill. Rev. Stat. 1987, ch. 40, par. 2311—1 et seq.). Sanders filed her petition for protection a few days before Shephard was released on parole from his criminal conviction for having abducted the child. (See Ill. Rev. Stat. 1983, ch. 38, par. 10—5(b)(3) (child abduction); People v. Shephard (1988), 171 Ill. App. 3d 977, 525 N.E.2d 1102 (affirmance of conviction).) For the reasons stated below, we affirm.

Sanders filed a civil petition seeking both emergency and plenary protection orders under the Illinois Domestic Violence Act on October 2, 1987. In support of her petition, Sanders stated in an affidavit that Shephard had telephoned her from prison and repeated prior threats to kill Sanders or do bodily harm to both Sanders and Deborah upon Shephard's release from prison. Sanders further stated in her affidavit that she believed Shephard would make arrangements to further conceal Deborah and destroy evidence of her whereabouts if Sanders were required to notify Shephard prior to attempting to obtain the emergency protection order.

On the basis of this petition and supporting affidavit, the trial court issued an emergency ex parte order of protection. The order directed Shephard not to strike, threaten, harass, or interfere with the personal liberty of Sanders or her family. It also ordered Shephard to initiate no contact whatsoever with Sanders. The trial court's order directed Shephard to appear in court on October 9, 1987, with the minor child, Deborah. It further noted, in bold, large print, "Willful violation of any provisions of this order constitutes contempt of court

and may further result in fine or imprisonment." The emergency order was set to expire by its own terms in two weeks. Copies of the summons and order were mailed to Shephard in prison by both direct and certified mail the same day the emergency order was entered.

The day following the court's entry of the emergency order, a court-appointed special process server attempted to serve Shephard with summons and a certified copy of the emergency order. Shephard refused to take these documents from the special process server, and the process server orally informed Shephard of the full contents of the summons and the emergency order, including the court's order that he appear in court on October 9 with Deborah.

On October 9, 1987, Shephard appeared in court without an attorney. He did not bring Deborah to court on that day or explain her absence from court. The transcript reflects that on that day Sanders presented to the court a verified petition for rule to show cause why Shephard should not be held in contempt of court for failure to produce the child, although Sanders' verified petition does not appear in the record upon review. Based upon Sanders' petition for a rule to show cause, the court held a contempt hearing *instanter*. Sanders testified that Shephard took Deborah from her in September 1984 and that Sanders had not seen the child since that time. An Illinois State Police officer testified that investigation revealed the child had not been seen since October 1984, and that Shephard was the last person seen with the child at that time.

Shephard requested that counsel be appointed to represent him at the contempt hearing. The court declined to do so, explaining to Shephard that the matter was a civil proceeding and that he was entitled to appointed counsel only in criminal proceedings. The court suggested that Shephard could later obtain counsel if he should choose to do so and that any contempt order entered that day would then be vacated. Under examination by the court, Shephard testified that he returned Deborah to Sanders in December 1984. Shephard also attempted to cross-examine Sanders, but his questions pertained to matters irrelevant to the proceedings. Sanders testified that Shephard had not returned the child to her.

Following this testimony, the trial court held Shephard in contempt of court for violating the October 9, 1987, order to produce Deborah. The court ordered Shephard imprisoned in Cook County jail for six months or until Shephard "purge[d] himself of contempt by producing the minor child Deborah Sanders." The court's order recited that it had been entered pursuant to hearing on Sanders' "verified petition for rule to show cause" and that Shephard "appeared

*pro se.*" While Shephard was present in court, he was informed that a hearing date of October 16, 1987, was set on Sanders' petition for a plenary order of protection. Shephard was also handed a copy of Sanders' petition for the protection orders and a copy of the court's emergency, *ex parte* order of protection. A notice of hearing was sent to Shephard at Cook County jail by certified mail on October 14, 1987.

The record bears no indication that Shephard requested to be brought to court or that the court ordered Shephard returned from jail for the scheduled October 16, 1987, hearing on Sanders' request for a plenary order of protection, and no attorney filed an appearance on Shephard's behalf prior thereto. The plenary protection hearing was held in Shephard's absence. The court inquired of Sanders' counsel whether Shephard had committed any additional acts in violation of the court's emergency protection order. In response, counsel informed the court, and Sanders confirmed, that Sanders had received a telephone call from an unnamed woman. This caller informed Sanders that if she wanted to see Deborah alive, Sanders should tell the trial court at the plenary hearing that she "had been lying about everything." The court determined that it would not "sanction" Shephard at that time for this alleged violation of the court's emergency protection order. On October 16, 1987, the court entered a plenary protection order which *inter alia* directed Shephard to immediately return the minor child to Sanders. The plenary order was set to expire by its own terms in two years. A certified copy of the plenary protection order was personally served upon Shephard at Cook County jail by a deputy sheriff on October 23, 1987.

A few weeks later, on November 2, 1987, counsel filed an appearance on behalf of Shephard and presented to the trial court a petition to vacate the October 16, 1987, contempt order and release Shephard from jail. Shephard's counsel also filed a motion to declare unconstitutional certain provisions of the Illinois Domestic Violence Act. On the same day, Sanders filed a verified petition for another rule to show cause, and a copy thereof was given to Shephard's attorney. The court issued the rule and set November 19, 1987, for hearing on the rule and on Shephard's pleadings.

At the hearing on the parties' motions, held on November 19, 1987, the court first considered Sanders' petition for a rule to show cause. At this time, Sanders again presented her testimony and the testimony of family members and investigating police officers to the effect that Shephard had taken Deborah from Sanders in September 1984, was the last person seen with the child in October 1984, and

had not returned the child to Sanders at any date following September 1984. Shephard, represented by counsel, testified on his own behalf that he had returned the child to Sanders in December 1984.

The trial court determined that Shephard "knows where the child is and was and is the last person to be seen with her." The court found that Shephard's "proffered explanation that he returned the child to [Sanders] in December, 1984, is not credible and is therefore unworthy of belief." The court found Shephard guilty of contempt for failure to comply with the October 16, 1987, protective order to produce the child and ordered Shephard incarcerated in Cook County jail for six months "or until such time as [he] purges himself of contempt by returning Deborah Sanders" to her mother. The trial court also vacated its October 9 contempt order, but denied Shephard's motion to declare unconstitutional certain provisions of the Illinois Domestic Violence Act. Shephard's appeal followed (docket number 87—3631).

In May 1988, and again in November 1988, the trial court found Shephard guilty of contempt and ordered Shephard's continued imprisonment for additional periods of six months from the dates of the orders or until such time as he purges himself of contempt by returning Deborah to her mother. Shephard was notified of each of these proceedings, provided an opportunity to respond, and was given hearings wherein he was represented by counsel. Shephard also appeals from these contempt orders entered in May 1988 (docket numbers 88—2070, 88—2100), and November 1988 (docket number 88—3714).

The following chronology of the proceedings in the trial court is presented to facilitate reference for the purpose of review:

October 2, 1987: *Ex parte* emergency protective order entered directing Shephard to appear in court on October 9, 1987, with the child;

October 9, 1987: Shephard held in contempt of court for his failure to comply with October 2, 1987, order; Shephard ordered imprisoned for six months or until such time as he purged the contempt by returning the child to Sanders;

October 16, 1987: Plenary order of protection, valid for two years, entered directing Shephard to return the child to Sanders;

November 2, 1987: Attorney filed appearance for Shephard; Shephard filed petition to vacate October 9, 1987, contempt find-

|  | ing and petition to declare certain provisions of Illinois Domestic Violence Act unconstitutional; Sanders filed new petition for rule to show cause for Shephard's failure to comply with October 16, 1987, order; |
| November 19 and 20, 1987: | October 9, 1987, contempt order vacated; on petition for rule filed on November 2, 1987, Shephard found in contempt for failure to comply with October 16, 1987, order; Shephard ordered imprisoned for six months, or until such time as he purged the contempt by returning the child to Sanders; Shephard's motions to declare unconstitutional certain provisions of Illinois Domestic Violence Act and to be released from jail were denied; Shephard appealed from these orders; |
| May 17, 1988: | Shephard held in contempt for failure to comply with October 16, 1987, order; Shephard ordered imprisoned for six months, or until he purged the contempt by returning the child to Sanders; Shephard appealed from this order; |
| November 18, 1988: | Shephard held in contempt for failure to comply with October 16, 1987, order; Shephard ordered imprisoned for six months, or until he purged the contempt by returning the child to Sanders; Shephard appealed from this order. |

Initially we note that although Shephard appeals from the trial court's contempt orders of November 1987, May 1988, and November 1988, Shephard has not filed a notice of appeal from the trial court's emergency and plenary orders of protection. Nevertheless, Shephard's appellate brief challenges the procedural due process sufficiency of the court's emergency and plenary protection orders. Because the court's contempt orders, from which Shephard does appeal, were

based upon Shephard's failure to comply with the terms of the court's protection orders, we find it appropriate to recognize Shepard's arguments regarding the procedural due process sufficiency of the court's emergency and plenary protective orders.

■ Shephard argues that the trial court's emergency order of protection entered on October 2, 1987, did not satisfy procedural due process, because he was not given prior notice of Sanders' petition for the emergency protective order. We disagree. There is no procedural due process defect in obtaining an emergency order of protection without notice to a respondent, when the petition for the emergency protection order is supported by affidavits that demonstrate exigent circumstances justifying entry of an emergency order without prior notice. (See, *e.g., Mitchell v. W.T. Grant Co.* (1974), 416 U.S. 600, 40 L. Ed. 2d 406, 94 S. Ct. 1895.) The Illinois Domestic Violence Act states that the trial court shall issue an emergency order of protection "regardless of prior service of process or of notice upon the respondent, because *** the harm which [the remedy requested by the petitioner] is intended to prevent would be likely to occur if the respondent were given any prior notice." Ill. Rev. Stat. 1987, ch. 40, par. 2312—17(a)(3)(i).

■ In the case at bar, Sanders requested the remedy, provided for under the Illinois Domestic Violence Act, that the respondent be "[o]rder[ed] *** to appear in court, *** with a minor child, to prevent *** concealment of the child." (Ill. Rev. Stat. 1987, ch. 40, par. 2312—14(7).) Sanders' affidavit in support of the emergency order of protection recited that she feared prior notice to Shephard of the petition for the emergency protection order would cause him to further conceal the child. In light of this allegation of harm if Shephard were given prior notice, the procedures utilized in this case to obtain the court's emergency order of protection did not violate procedural due process.

■ Shephard also contends that the court's plenary order of protection was obtained in violation of his procedural due process rights. In our view, Shephard has waived this claim for purposes of review. If Shephard had alerted the court at its November 19, 1987, hearing that Shephard believed he was entitled to a new hearing with respect to the court's plenary protection order, the trial court could have granted Shephard's request and held both a new plenary protection hearing and thereafter a new contempt hearing on November 19. However, Shephard did not argue to the trial court that he believed he was entitled to a new hearing on the petition for plenary protective order because of procedural due process violations. Under the

facts of this case, Shephard's argument amounts to an "after-the-fact complaint about an avoidable situation" that Shephard could have prevented had he presented this argument to the trial court in a timely fashion. (*Crossman v. Curless* (1988), 178 Ill. App. 3d 97, 100-01, 532 N.E.2d 1110.) We are also of the opinion that the evidence presented at the trial court's November 19, 1987, hearing on Sanders' contempt petition would have been essentially the same evidence which would have been presented at the hearing on the petition for plenary protection and that the evidence presented at the contempt hearing would have been sufficient to support the entry of a plenary protection order. See Ill. Rev. Stat. 1987, ch. 40, par. 2312—14(7); see generally *In re Marriage of Hagaman* (1984), 123 Ill. App. 3d 549, 462 N.E.2d 1276.

■ Shephard also argues that provisions of the Illinois Domestic Violence Act regarding emergency protection orders (Ill. Rev. Stat. 1987, ch. 40, par. 2312—17(a)(3)), plenary protection orders (Ill. Rev. Stat. 1987, ch. 40, par. 2312—19), and body attachment (Ill. Rev. Stat. 1987, ch. 40, par. 2312—23(b)(1)) are unconstitutional on their face for lack of adequate procedural due process guarantees. We disagree. As noted above, procedural due process with respect to the issuance of an emergency protection order does not require prior notice to a respondent where there is a showing of exigent circumstances. (See, *e.g., Mitchell v. W.T. Grant Co.* (1974), 416 U.S. 600, 40 L. Ed. 2d 406, 94 S. Ct. 1895.) Contrary to Shephard's contention, the Illinois Domestic Violence Act does require prior notice of a hearing with respect to a petition for plenary order of protection. (Ill. Rev. Stat. 1987, ch. 40, par. 2312—19; see also *In re Marriage of Lenhardt* (1989), 176 Ill. App. 3d 429, 531 N.E.2d 123.) Also, since no body attachment (see Ill. Rev. Stat. 1987, ch. 40, par. 2312—23(b)(1)) was ordered in the case at bar, Shephard cannot properly contest the Act's procedural requirements with respect thereto. See, *e.g., Kluk v. Lang* (1988), 125 Ill. 2d 306, 531 N.E.2d 790.

■■ ■ Having considered Shephard's arguments regarding the court's emergency and plenary orders of protection, we turn to Shephard's claims regarding the trial court's contempt orders. Shephard asserts that the court's first contempt order, entered October 9, 1987, was in error because he was not accorded appointment of counsel. Although the trial court later vacated its October 9 contempt order, we elect to address Shephard's claim on its merits. We note that the court's contempt order was for indirect contempt, since the basis for Shephard's failure to comply with the court's order to produce the child in court required proof of matters outside the immedi-

ate knowledge of the court. (See *People v. L.A.S.* (1986), 111 Ill. 2d 539, 490 N.E.2d 1271 (attorney's failure to appear in court on specified date and time amounted to indirect contempt because reasons for failure to appear not in immediate direct knowledge of trial court judge).) Furthermore, the court's indirect contempt order was civil in nature rather than criminal, since the purpose of the court's order was to compel Shephard's production of the child rather than punish him for contumacious conduct. See *People v. Rodriguez* (1987), 162 Ill. App. 3d 149, 514 N.E.2d 1033 (court's order that respondent be imprisoned until production of child was order for civil contempt); see generally Burr, *The Law of Contempt in Illinois*, 19 Loy. U. Chi. L.J. 827 (1988).

We hold that Shephard was entitled to counsel at the court's hearing with respect to whether Shephard should be imprisoned for indirect civil contempt. In so holding, we find applicable to the case at bar the reasoning of the court in *Walker v. McLain* (10th Cir. 1985), 768 F.2d 1181, in which an individual was imprisoned in an indirect civil contempt action for nonpayment of child support:

> " 'It is the defendant's interest in personal freedom, and not simply the special sixth and fourteenth amendment right to counsel in criminal cases, which triggers the right to appointed counsel.' *Lassiter v. Department of Social Services of Durham County*, 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 *** (1981). It would be absurd to distinguish criminal and civil incarceration; from the perspective of the person incarcerated, the jail is just as bleak no matter which label is used. In addition, the line between criminal and civil contempt is a fine one, and is rarely as clear as the state would have us believe. The right to counsel, as an aspect of due process, turns not on whether a proceeding may be characterized as 'criminal' or 'civil,' but on whether the proceeding may result in a deprivation of liberty. [Citation.]" 768 F.2d at 1183.

■ Virtually every reported decision which has considered the issue of whether a respondent is entitled to counsel in an indirect civil contempt proceeding has rejected the argument that a distinction should be drawn between civil and criminal contempt when the respondent faces the possibility of incarceration if held in contempt. The courts have based these decisions upon the United States Supreme Court's decision in *Lassiter*, in which the Court recognized a presumption that due process requires the representation by counsel to all persons who may lose their liberty regardless of the nomenclature used to describe the proceeding. In light of *Lassiter*, courts have uni-

formly concluded that, when imprisonment is a possible result of the indirect civil contempt proceeding for a respondent's failure to make court-ordered child support payments, due process requires that the respondent be provided the opportunity to obtain legal representation, and that the indigent respondent be appointed counsel to represent him at the contempt proceeding if he desires legal representation. (*Ridgeway v. Baker* (5th Cir. 1983), 720 F.2d 1409; *Sevier v. Turner* (6th Cir. 1984), 742 F.2d 262; *Walker v. McLain* (10th Cir. 1985), 768 F.2d 1181; *Johnson v. Zurz* (N.D. Ohio 1984), 596 F. Supp. 39; *Lake v. Speziale* (D. Conn. 1984), 580 F. Supp. 1318; *Cobb v. Green* (W.D. Mich. 1983), 574 F. Supp. 256; *Mastin v. Fellerhoff* (S.D. Ohio 1981), 526 F. Supp. 969; *Padilla v. Padilla* (Colo. App. 1982), 645 P.2d 1327; *Dube v. Lopes* (1984), 40 Conn. Sup. 111, 481 A.2d 1293; *In re Marriage of Stariha* (Ind. App. 1987), 509 N.E.2d 1117; *Rutherford v. Rutherford* (1983), 296 Md. 347, 464 A.2d 228; *Cox v. Slama* (Minn. 1984), 355 N.W.2d 401; *Tetro v. Tetro* (Wash. 1975), 544 P.2d 17; see generally Comment, *Indigent Defendant's Right to Court-Appointed Counsel in Civil Contempt Proceedings for Nonpayment of Child Support*, 50 U. Chi. L. Rev. 326 (1983).) This same reasoning based upon *Lassiter* has led courts to recognize the right to counsel in proceedings for indirect civil contempt when an individual may be imprisoned for his failure to testify before a grand jury under a grant of immunity. *In re Di Bella* (2d Cir. 1975), 518 F.2d 955; *In re Kilgo* (4th Cir. 1973), 484 F.2d 1215; *United States v. Anderson* (8th Cir. 1977), 553 F.2d 1154; *In re Grand Jury Proceedings: United States v. Sun Kung Kang* (9th Cir. 1972), 468 F.2d 1368.

■ In our view a respondent imprisoned for failure to produce a minor child is in similar circumstances to those individuals incarcerated for refusal to testify before grand juries, or for failure to make court-ordered child support payments. In each situation, the individual facing imprisonment for indirect civil contempt should be accorded counsel to represent him, including appointed counsel if the respondent is indigent. (*Lassiter v. Department of Social Services* (1981), 452 U.S. 18, 68 L. Ed. 2d 640, 101 S. Ct. 2153.) We therefore determine that Shephard was entitled to representation by an attorney at the court's October 9 contempt hearing. If he could not afford an attorney, the court was obligated to appoint one to represent him.

■ We also agree with Shephard's assertion that the court's October 9 contempt hearing was held without adequate notice to him, in violation of procedural due process. Although Shephard was notified that the court's emergency protection order directed his appearance in court with the child, nothing advised Shephard that his failure to

do so would result in an order finding him in contempt and ordering his incarceration. Sanders did not notify Shephard of her intention to seek a rule to show cause contempt finding at the court's October 9 hearing. Absent prior notice of the contempt consequences of his failure to appear in court with the child on the date specified, the court should not have found Shephard in contempt of court at its October 9 hearing. See *People ex rel. Williams v. Williams* (1987), 156 Ill. App. 3d 438, 509 N.E.2d 460.

■■■ With regard to the court's contempt orders of November 1987, May 1988, and November 1988, Shephard asserts that, because he has been previously convicted and sentenced for having abducted the child, his subsequent incarcerations for indirect civil contempt violate double jeopardy. We disagree. In order to convict Shephard of child abduction, the State was required to prove that Shephard removed Deborah without Sanders' consent and that Shephard was Deborah's putative father. (See Ill. Rev. Stat. 1983, ch. 38, par. 10—5(b)(3).) In order to determine that Shephard had committed acts of indirect civil contempt, it was necessary for the trial court to determine that Shephard had wilfully violated a valid court order that Shephard produce the minor child in court. (See, *e.g., Central Production Credit Association v. Kruse* (1987), 156 Ill. App. 3d 526, 509 N.E.2d 136.) Because the elements of the crime of Shephard's child abduction conviction and the elements in the indirect civil contempt judgment were not identical, Shephard's imprisonment for indirect civil contempt did not violate double jeopardy. See *People v. Totten* (1987), 118 Ill. 2d 124, 514 N.E.2d 959; *People v. Doherty* (1988), 165 Ill. App. 3d 630, 518 N.E.2d 1303; *People v. Rodriguez* (1987), 162 Ill. App. 3d 149, 514 N.E.2d 1033; see generally Brady, *The Illinois Domestic Violence Act of 1986: A Selective Critique*, 19 Loy. U. Chi. L.J. 797 (1988).

■■■ Shephard further complains that the trial court's successive contempt orders in themselves violate double jeopardy. In this regard Shephard claims that double jeopardy is violated by the court's subsequent contempt orders, entered in May and November 1988, when these contempt orders are premised on the same factual basis for the court's first contempt order entered in November 1987. As a general rule, however, double jeopardy attaches for subsequent or multiple criminal prosecutions, not for subsequent or multiple civil proceedings. (See, *e.g., People v. Doherty* (1988), 165 Ill. App. 3d 630, 638, 518 N.E.2d 1303.) As stated more fully below, the trial court's contempt orders in the case at bar are in the nature of civil contempt rather than criminal contempt, since the trial court's contempt orders

contain provisions permitting Shephard to purge himself of the contempt by his return of the child to Sanders and are designed to protect Sanders' custody interest in her daughter. (See *Doherty*, 165 Ill. App. 3d at 634-37.) Because the court's orders pertain to civil contempt, double jeopardy does not bar the court's successive contempt orders upon the expiration of each six-month period. *Doherty*, 165 Ill. App. 3d 630, 518 N.E.2d 1303.

Shephard also contends that the trial court's "continuous and consecutive contempt orders made without any factual basis to believe that [Shephard] can comply with the order, [have] become punitive in nature." According to Shephard, "It is the repeated actual and potential (apparently without any limit) number of contempt prosecutions in this case that trigger [*sic*] the protections of the double jeopardy clause." We disagree.

■■■ Based upon our review of the record, we conclude that the trial court's successive contempt orders in the case at bar do not amount to findings of criminal contempt against Shephard such that principles of double jeopardy would apply. Each of the trial court's contempt orders grants Shephard the explicit, unconditional right to purge himself of contempt by returning the child to Sanders. The trial court's oral pronouncements demonstrate that the court's objective is to benefit Sanders, by recognizing and protecting her right to physical custody of her minor child, and to prompt Shephard's compliance with the court's plenary order of protection. We do not believe, under the facts of this case, that the court's successive contempt orders, now amounting to Shephard's imprisonment for approximately 19 months, are so onerous in their aggregate that the contempt orders should be characterized as criminal, rather than civil, contempt. See *Shillitani v. United States* (1966), 384 U.S. 364, 16 L. Ed. 2d 622, 86 S. Ct. 1531 (defendants' two-year imprisonment for refusal to answer grand jury questions found to be in the nature of civil contempt); see also *United States v. Halper* (1989), 490 U.S. ____, ____, 104 L. Ed. 2d 487, 502, 109 S. Ct. 1892, 1902 ("under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution"); *Hicks v. Feiock* (1988), 485 U.S. 624, 631, 99 L. Ed. 2d 721, 731, 108 S. Ct. 1423, 1429 ("the critical features" that distinguish civil and criminal contempt "are the substance of the proceeding and the character of the relief that the proceeding will afford").

■■■ Shephard also asserts that he is entitled to credit for the

time he "served" pursuant to the court's October 9 contempt order which the court later vacated. Although Shephard contends that this result would be equitable, he has provided to this court no specific legal basis for his argument in this regard. Consequently, we are unable to properly review the validity of Shephard's claim on this point, and the question is waived on review. See, *e.g.*, *In re Marriage of Talmadge* (1989), 179 Ill. App. 3d 806, 534 N.E.2d 1356.

Shephard argues that all of the court's contempt orders must be reversed because they are against the manifest weight of the evidence. However, Shephard had the burden of proving that he was unable, through no fault of his own, to comply with the court's order that he produce the child. (See *In re Marriage of Logston* (1984), 103 Ill. 2d 266, 469 N.E.2d 167; *Central Production Credit Association v. Kruse* (1987), 156 Ill. App. 3d 526, 509 N.E.2d 136.) We also note that placement of this burden upon Shephard does not violate due process, because the court's orders were in the nature of civil rather than criminal contempt. *Hicks v. Feiock* (1988), 485 U.S. 624, 99 L. Ed. 2d 721, 108 S. Ct. 1423.

The trial court determined that Shephard had provided no valid basis for his failure to comply with the court's order that he return the minor child to Sanders. Based upon our review of the record, we cannot say that the trial court's factual findings were against the manifest weight of the evidence. Sanders testified that Shephard took the child from her in September 1984, and denied Shephard's assertion that he returned the child to her in December 1984. The trial court credited Sanders' testimony that Shephard had not returned the child to her. Police investigation revealed that Shephard was the last person seen with the child and that this sighting occurred in October 1984. Accordingly, the evidence presented to the trial court permits the inference that Shephard knows of the child's whereabouts, is able to obtain her presence in court, and has wilfully failed and refused to do so in violation of the court's order that Shephard produce the child.

Shephard also argues that the trial court's contempt orders were improperly influenced by certain testimony from Sanders at the court's plenary protection hearing. Sanders informed the court at this hearing that an unnamed woman had telephoned Sanders, after the emergency protection order was entered, and told Sanders that if she wanted to see Deborah alive, she should tell the trial court at the court's plenary protection hearing that she "had been lying about everything." However, the court's oral pronouncements at the court's later contempt hearings indicate that the court gave little or no

weight or significance to this incident. As a result, we cannot conclude that the trial court's contempt rulings were improperly influenced by Sanders' testimony regarding the telephone call.

For the reasons stated, the orders of the circuit court of Cook County are affirmed.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.