ANNUNZIATA, J., with whom FITZPATRICK, C.J., BENTON, ELDER, and CLEMENTS, JJ., join, dissenting.
For the reasons that follow, I respectfully dissent from the majority’s decision to deny Krieger court-appointed counsel on appeal and a free copy of any available transcripts.

*586
A. Indigent Litigant’s Right to Court-Appointed Counsel

To address the issue before us, we must first examine whether the law requires the appointment of counsel at the trial level, as it is the wellspring from which the right to counsel on appeal emanates. As the United States Supreme Court has made clear, “[a] State’s obligation to provide appellate counsel to poor defendants faced with incarceration applies to appeals of right.” M.L.B. v. S.L.J., 519 U.S. 102, 113, 117 S.Ct. 555, 562, 136 L.Ed.2d 473 (1996); accord Cabaniss v. Cunningham, 206 Va. 330, 333, 143 S.E.2d 911, 913 (1965) (“[F]ailure to appoint counsel to assist an indigent defendant in making an appeal from a conviction is a denial of equal protection and due process guaranteed to him under the Federal Constitution and the Virginia Bill of Rights.” (citations omitted)); see also Griffin v. Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956) (“There is no meaningful distinction between a rule which would deny the poor the right to defend themselves in a trial court and one which effectively denies the poor an adequate appellate review.”). Because an appeal from a civil contempt finding lies as a matter of right in Virginia, see Code § 19.2-318, if due process requires the Commonwealth to appoint counsel for Krieger at trial, then he is entitled to appointed counsel on appeal.
Therefore, I begin by examining the Due Process Clause of the Fourteenth Amendment of the United States Constitution in which the right to counsel at trial is rooted. It provides, in relevant part: “[n]o state shall ... deprive any person of ... liberty ... without due process of law.... ” U.S. Const, amend. XIV, § 1.
A citizen’s interest in personal liberty is “the most fundamental interest protected by the Constitution of the United States.” McBride v. McBride, 334 N.C. 124, 431 S.E.2d 14, 14 (1993); see also Butts v. Commonwealth, 145 Va. 800, 806, 133 S.E. 764, 766 (1926) (noting that personal liberty is a fundamental right). Consequently, when one’s liberty is at stake, the need for the assistance of counsel is beyond question. See Argersinger v. Hamlin, 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 *587 L.Ed.2d 530 (1972) (holding that “no person may be imprisoned for any offense ... unless he was represented by counsel [because] ‘the prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or “petty” matter and may well result in quite serious repercussions affecting his career and his reputation.’ ” (quoting Baldwin v. New York, 399 U.S. 66, 73, 90 S.Ct. 1886, 1890, 26 L.Ed.2d 437 (1970))). The basis for this requirement is well known:
“Even the intelligent and educated layman has small and sometimes no skill in the science of law.... He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.”
Gideon v. Wainwright, 372 U.S. 335, 345, 83 S.Ct. 792, 797, 9 L.Ed.2d 799 (1963) (quoting Powell v. Alabama, 287 U.S. 45, 68-69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932)); see also Scott v. Illinois, 440 U.S. 367, 370, 99 S.Ct. 1158, 1160, 59 L.Ed.2d 383 (1978) (“[T]he guiding hand of counsel [is] so necessary where one’s liberty is in jeopardy.”); Powell, 287 U.S. at 68-69, 53 S.Ct. at 64 (holding that due process includes the right to the assistance of counsel for criminal defendants facing actual imprisonment because it is “necessary to insure fundamental human rights of life and liberty ... ”); Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923) (‘Without doubt, [the Fourteenth Amendment] denotes ... freedom from bodily restraint.”).
The Court recently reiterated the rationale for providing counsel to those who face imprisonment in Alabama v. Shelton, — U.S. -, -, 122 S.Ct. 1764, 1772, 152 L.Ed.2d 888 (2002). Notably, the Court underscored that an important goal of the right to counsel is to ensure that adjudications are sufficiently reliable to permit incarceration, warning that: “a defendant [deprived of trial counsel] faces incarceration on a conviction that has never been subject to ‘the crucible of *588 meaningful adversarial testing.’ ” Id. (quoting United States v. Cronic, 466 U.S. 648, 656, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984)).
The principle underlying the right to counsel applies with equal force where one’s liberty is in jeopardy in a civil case. See In re Gault, 387 U.S. 1, 36-37, 41, 87 S.Ct. 1428, 1451, 18 L.Ed.2d 527 (1967) (finding court-appointed counsel is “essential” in a civil delinquency proceeding “which may result in commitment to an institution in which the juvenile’s freedom is curtailed ...”); Walker v. McLain, 768 F.2d 1181, 1183 (10th Cir.1985) (holding that because “jail is just as bleak” for the civil litigant, due process requires the right to appointed counsel); Ridgway v. Baker, 720 F.2d 1409, 1413 (5th Cir. 1983) (“The right to counsel turns on whether deprivation of liberty may result from a proceeding, not upon its characterization as ‘criminal’ or ‘civil.’ ”); McNabb v. Osmundson, 315 N.W.2d 9, 11 (Iowa 1982) (“The jail doors clang with the same finality behind an indigent who is held in contempt and incarcerated ... as they do behind an indigent who is incarcerated for a violation of a criminal statute.”); State ex rel. Graves v. Daugherty, 164 W.Va. 726, 266 S.E.2d 142, 144 (1980) (“We eschew the rubric of ‘criminal’ versus ‘civil’ in determining what process is fair.”).
In Lassiter v. Dept. of Social Services, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), the United States Supreme Court addressed whether an indigent civil litigant has a due process right to court-appointed counsel where the loss of parental rights was at stake. The Supreme Court made clear that its resolution of the issue did not turn on whether the “proceeding[ ] may be styled ‘civil’ and not ‘criminal.’ ” Id. at 25, 101 S.Ct. at 2159. Rather, it noted that “it is a litigant’s interest in personal freedom and not simply the special Sixth and Fourteenth Amendments right to counsel in criminal cases, [that] triggers the right to appointed counsel....” Id. The Court cited its earlier decision, In re Gault, 387 U.S. at 36-37, 87 S.Ct. at 1448, as authority for the conclusion reached, noting that “[t]he pre-eminent generalization that emerges from [the United States Supreme] Court’s precedents *589 on an indigent’s right to appointed counsel is that such a right has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation.” Lassiter, 452 U.S. at 25, 101 S.Ct. at 2158.
In re Gault established the core principle of the Lassiter holding. In that case, court-appointed counsel was found to be “essential” in a civil delinquency proceeding because it “[carried] with it the awesome prospect of incarceration in a state institution.” 387 U.S. at 36-37, 87 S.Ct. at 1448. The proceeding’s technical classification as “non-criminal” was of no consequence. Id. at 27, 87 S.Ct. at 1443. Thus, the right to counsel is triggered by a litigant’s risk of actual incarceration.
Moreover, although a civil litigant facing actual imprisonment is not entitled to the full panoply of due process rights,[8] he is entitled to counsel. The right to counsel is recognized as unique among the panoply of due process rights. See Bowerman v. MacDonald, 431 Mich. 1, 427 N.W.2d 477, 482 (1988) (noting that the right to counsel is a “particular and clearly demarcated right” separate from the full panoply of due process rights); Custis v. United States, 511 U.S. 485, 496, 114 S.Ct. 1732, 1738, 128 L.Ed.2d 517 (1994) (“[F]ailure to appoint counsel for an indigent defendant [is] a unique constitutional defect.” (citing United States v. Tucker, 404 U.S. 443, 92 S.Ct. *590 589, 80 L.Ed.2d 592 (1972); Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938))).
[T]here is a historical basis ... for treating the right to have counsel appointed as unique, perhaps because of [the United States Supreme Court’s] oftstated view that “the right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel.”
Custis, 511 U.S. at 494-95, 114 S.Ct. at 1738 (quoting Powell, 287 U.S. at 68-69, 53 S.Ct. at 64). As noted in Walker v. McLain, the guiding hand of counsel is essential to ensure that a civil litigant is not wrongfully imprisoned based on an erroneous finding of contempt:
[i]f petitioner is truly indigent, his liberty interest is no more conditional than if he were serving a criminal sentence; he does not have the keys to the prison door if he cannot afford the price. The fact that he should not have been jailed if he is truly indigent only highlights the need for counsel, for the assistance of a lawyer would have greatly aided him in establishing his indigency and ensuring that he was not improperly incarcerated.
768 F.2d at 1184; accord Mead v. Batchlor, 435 Mich. 480, 460 N.W.2d 493, 499 (1990).[9]
Consequently, the right to counsel may apply in situations where other due process rights do not. For example, the Court held in Custis that a defendant may collaterally attack a sentence enhanced by a prior hearing where the right to counsel was violated at that hearing, but he cannot do so where other due process rights are at issue. Id. In short, because the right to counsel is a unique constitutional right, which is “necessary to insure fundamental human rights of life *591 and liberty,” Powell, 287 U.S. at 68-69, 53 S.Ct. at 64, especially “where one’s liberty is in jeopardy,” Scott, 440 U.S. at 370, 99 S.Ct. at 1160, the due process right to counsel applies to all litigants facing actual imprisonment.
Indeed, in Shelton, the United States Supreme Court held “that a suspended sentence that may end up in the actual deprivation of a person’s liberty may not be imposed unless the defendant was accorded the guiding hand of counsel in the prosecution for the crime charged.” — U.S. at -, 122 S.Ct. at 1767. Significantly, the court observed as follows:
“[Our] ... decisions have reiterated the Argersinger-Scott actual imprisonment standard. See, e.g., Glover v. United States, 531 U.S. 198, 203, 121 S.Ct. 696, 700, 148 L.Ed.2d 604 (2001) (any amount of actual jail time has Sixth Amendment significance); M.L.B. v. S.L.J., 519 U.S. 102, 113, 117 S.Ct. 555, 562, 136 L.Ed.2d 473 (1996); Nichols v. United States, 511 U.S. 738, 746, 114 S.Ct. 1921, 1927, 128 L.Ed.2d 745 (1994) (constitutional line is between criminal proceedings that resulted in imprisonment, and those that did not); id.[~\ at 750, 114 S.Ct. at 1929 (Souter, J., concurring in judgment) (The Court in Scott, relying on Argersinger [,] drew a bright line between imprisonment and lesser criminal penalties.); Lassiter v. Department of Social Servs. of Durham Cty., 452 U.S. 18, 26, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981). It is thus the controlling rule that absent a knowing and intelligent waiver, no person may be imprisoned for any offense unless he was represented by counsel at his trial. Argersinger, 407 U.S.[ ] at 37[, 92 S.Ct. at 2012].”
Shelton, — U.S. at -, 122 S.Ct. at 1769.
The reference to Lassiter in this context was not a careless aside, and it supports the central thesis of this dissent—that an indigent person has a right to counsel in any proceeding, criminal or civil, when that person faces a deprivation of physical liberty.
Nearly all state and federal courts addressing the right to counsel in a civil case have adopted the reasoning of the *592 United States Supreme Court in Lassiter and In re Gault, and have concluded that an indigent’s due process right to appointed counsel is catalyzed by the fundamental interest in physical liberty, and not by the civil or criminal nature of the proceeding. The seven federal circuit courts considering the issue have unanimously concluded that due process requires the appointment of counsel for indigent civil contemnors facing actual imprisonment. See Walker, 768 F.2d at 1183; Sevier v. Turner, 742 F.2d 262, 267 (6th Cir.1984); Ridgway, 720 F.2d at 1413; United States v. Bobart Travel Agency, 699 F.2d 618, 620 (2d Cir.1982); United States v. Anderson, 553 F.2d 1154, 1155-56 (8th Cir.1977) (per curiam); In re Kilgo, 484 F.2d 1215, 1221 (4th Cir.1973); In re Grand Jury Proceedings; United States v. Sun Kung Kang, 468 F.2d 1368 (9th Cir. 1972); see also Mastin v. Fellerhoff, 526 F.Supp. 969, 972-73 (S.D.Ohio 1981); Young v. Whitworth, 522 F.Supp. 759, 763-65 (S.D.Ohio 1981). The majority of state courts considering the question have likewise followed the Lassiter rationale and have held that when an indigent civil litigant faces a deprivation of physical liberty, the right to appointed counsel at trial and appeals of right is absolute unless waived. See Wisconsin v. Pultz, 206 Wis.2d 112, 556 N.W.2d 708, 713 (1996) (noting that Lassiter held that an indigent litigant has a right to appointed counsel when a loss on the merits would deprive the litigant of personal liberty); McBride, 431 S.E.2d at 17 (same); North Dakota v. Gruchalla, 467 N.W.2d 451, 453 (N.D.1991) (noting that Lassiter recognized “that indigent defendants have a right to have counsel appointed at government expense when their physical liberty is in jeopardy”); see also Black v. Division of Child Support Enforcement, 686 A.2d 164, 167 (Del.1996); Allen v. Casady, 245 Neb. 149, 511 N.W.2d 125, 127 (1994); Emerick v. Emerick, 28 Conn.App. 794, 613 A.2d 1351, 1353 (1992); Mead, 460 N.W.2d at 499; State v. Broussard, 490 So.2d 273 (La.1986); Cox v. Slama, 355 N.W.2d 401 (Minn.1984); Rutherford v. Rutherford, 296 Md. 347, 464 A.2d 228 (1983); McNabb, 315 N.W.2d at 14; Salas v. Castellanos, 24 Cal.3d 22, 154 Cal.Rptr. 529, 593 P.2d 226, 230, 234 (1979); Colorado v. Lucero, 196 Colo. 276, 584 *593 P.2d 1208 (1978); Tetro v. Tetro, 86 Wash.2d 252, 544 P.2d 17, 19 (1975); Smoot v. Dingess, 160 W.Va. 558, 236 S.E.2d 468, 471 (1977); Otton v. Zaborac, 525 P.2d 537 (Alaska 1974); Ex Parte Goodman, 742 S.W.2d 536, 539 (Tex.App.1987) (“It is settled law in [Texas] that when an indigent is charged with [civil or criminal] contempt, is not represented by counsel and has not intelligently waived the right to assistance of counsel, a court may not, without violating the constitutional right to assistance of counsel, impose imprisonment....”); In re Marriage of Stariha, 509 N.E.2d 1117, 1121 (Ind.Ct.App.1987); Bradford v. Bradford, 1986 WL 2874, *4-*5, 1986 Ten.App. Lexis 3556, *9-13; Johnson v. Johnson, 11 Kan.App.2d 317, 721 P.2d 290, 294 (1986); Commonwealth ex rel Bromn v. Hendrick, 220 Pa.Super. 225, 283 A.2d 722, 723-24 (1971). A review of these cases makes clear that the majority’s characterization of the proceeding as “civil” and its emphasis on the remedial nature of civil contempt penalties are not determinative of the core question before us.
Rejecting the holdings and reasoning of the United States Supreme Court in In re Gault and Lassiter, and their progeny, the majority invokes a balancing test to determine whether an alleged contemnor facing actual imprisonment has a right to counsel, and concludes that no right exists. In adopting this test, the majority misconstrues the holding in Lassiter and its progeny. To be sure, Lassiter used a Mathews balancing test to resolve the issue before it.[10] However, the Court in Lassiter posited the test to govern cases in which the petitioning civil litigant did not risk incarceration as a result of losing the litigation at issue. See Lassiter, 452 U.S. at 27, 101 *594 S.Ct. at 2159-60 (holding that where a civil litigant does not risk a deprivation of liberty, a balancing test must be applied to rebut the presumption that such a litigant does not have a right to counsel). Faced with a litigant whose parental rights, not her interest in liberty, were at stake, the Lassiter Court adopted a balancing test to guide the court’s resolution of the issue. Its applicability, it must be underscored, is limited to those cases where an indigent civil litigant’s fundamental liberty interest is not at risk in the subject litigation. See id. at 26-27, 101 S.Ct. at 2159-60 (concluding that parent’s right to counsel should be decided on case-by-case basis because parental termination proceedings do not involve the loss of liberty); In re Gault, 387 U.S. at 36-37, 87 S.Ct. at 1448 (concluding, without a balancing test, that a juvenile has a right to counsel in a civil delinquency proceeding “carrying with it the awesome prospect of incarceration ... ”); McBride, 431 S.E.2d at 17 (observing that the Court in Lassiter considered the Mathews factors “[b]ecause there was no potential deprivation of physical liberty in the proceeding at issue ...”); In re Marriage of Stariha, 509 N.E.2d at 1121 (noting that Lassiter does not require the court to address the Mathews factors where the litigant risks the loss of physical liberty); Tetro, 544 P.2d at 19 (holding that where liberty is not at issue, the right to counsel turns on the nature of the proceeding and the issues involved, but where a litigant faces imprisonment, counsel is required); County of Santa Clara v. Rodriguez, 2 Cal.App.4th 1686, 1694, 5 Cal.Rptr.2d 7 (1992) (“In Lassiter ... the United States Supreme Court made clear that complexity, as a determinant of what due process requires, will come into play only in a situation in which there is no risk the [litigant] will lose his or her personal freedom. Where personal freedom is at stake, a due process basis for appointment of counsel is established without consideration of other possible determinants.”); Bradford, 1986 WL 2874, *4, 1986 Ten.App. Lexis 3556, *11 (“When there is the actual possibility of incarceration ... the court need not evaluate claims on a case by case basis.”); see also Morrissey v. Brewer, 408 U.S. 471, 480, 482, 92 S.Ct. 2593, 2601, 33 L.Ed.2d *595 484 (1972) (holding that a parolee, having been convicted of a crime, has a limited liberty interest and, thus, the parolee’s right to the assistance of counsel in parole revocation hearings is determined on a case-by-case basis); Gagnon v. Scarpelli, 411 U.S. 778, 790, 93 S.Ct. 1756, 1763-64, 36 L.Ed.2d 656 (1973) (holding that a felony probationer facing a probation revocation hearing does not enjoy the unqualified liberty interest that other litigants enjoy and, applying a balancing test, found no right to court-appointed counsel).
The majority’s conclusion that a balancing test is appropriate in the present case is unsupported by current case law. Indeed, none of the foregoing federal circuit courts employed a balancing test to determine whether the civil contemnor was entitled to court-appointed counsel; rather, they followed the Lassiter rationale and established the right to counsel for an indigent civil litigant on the sole ground that the civil litigant’s fundamental liberty interest was at stake in contempt proceedings. Of the twenty-three state courts that have addressed the issue and held that a due process right to appointed counsel exists, two have concluded that the trial court should apply a balancing test to determine the right on a case-by-case basis. New Mexico v. Rael, 97 N.M. 640, 642 P.2d 1099, 1103 (1982); Duval v. Duval, 114 N.H. 422, 322 A.2d 1, 4 (1974).
Only the state of Florida has declined to adopt the Supreme Court’s rationale in Gideon, In re Gault, and Lassiter, and concluded that civil contemnors facing imprisonment do not have a due process right to counsel. See Andrews v. Walton, 428 So.2d 663, 665-66 (Fla.1983); see also In re Marriage of Betts, 200 Ill.App.3d 26, 146 Ill.Dec. 441, 558 N.E.2d 404, 421-24 (1990). But see Sanders v. Shephard, 185 Ill.App.3d 719, 133 Ill.Dec. 712, 541 N.E.2d 1150 (1989) (holding that an alleged civil contemnor has an absolute due process right to counsel). Additionally, before the Supreme Court decided Lassiter, two state courts held that a civil contemnor does not have a due process right to counsel. See Meyer v. Meyer, 414 A.2d 236, 239 (Me.1980); In re Calhoun, 47 Ohio St.2d 15, 350 N.E.2d 665, 667 (1976). But see Simpson v. Francis, 1990 WL 119250, *4, 1990 Ohio App. Lexis 3412, *10 (holding that *596 Calhoun has been overruled by Lassiter and finding that petitioner, an alleged civil contemnor, has a due process right to appointed counsel). It is within this three-state minority that the majority opinion places indigent civil litigants in Virginia courts who risk incarceration if they lose the litigation. I cannot join in this holding.
Krieger, as an alleged civil contemnor, begins the show cause proceeding with a fully intact liberty interest, which is put at risk by that proceeding. Like the petitioner in In re Gault facing a civil delinquency proceeding, he enters the courthouse with an unqualified liberty interest that he “may lose ... if he loses the litigation.” Lassiter, 452 U.S. at 25, 101 S.Ct. at 2158; In re Gault, 387 U.S. at 27, 87 S.Ct. at 1443. “The grim reality of [his] threatened jail sentence overshadows the technical distinctions between ‘criminal,’ ‘quasi-criminal,’ and ‘civil’ violations and demands that the protection of legal advice and advocacy be given.... ” Tetro, 544 P.2d at 19.
Thus, applying the reasoning of In re Gault, Lassiter, and their progeny, I find that neither the majority’s characterization of the proceeding as civil nor its focus on the remedial nature of the penalty squarely addresses the issue before us. Rather, I would rule that Krieger is entitled to court-appointed counsel because his liberty interest was not only put at risk, but was, in fact, lost. See Lassiter, 452 U.S. at 26-27, 101 S.Ct. at 2159-60. Specifically, I would hold a civil contemnor facing actual incarceration has a right to appointed counsel at trial unless waived.[11]
It follows that such a litigant is entitled to counsel on appeal. See M.L.B., 519 U.S. at 110, 117 S.Ct. at 560-61 (“Although the Federal Constitution guarantees no right to appellate review, once a State affords that right, Griffin held *597 that the State may not bolt the door to equal justice.” (internal quotation omitted)); Cabaniss, 206 Va. at 333, 143 S.E.2d at 913 (“[F]ailure to appoint counsel to assist an indigent defendant in making an appeal from a conviction is a denial of equal protection and due process guaranteed to him under the Federal Constitution and the Virginia Bill of Rights.” (citations omitted)). Therefore, I would hold that the trial court erred in denying appellant’s request for assistance of counsel on appeal.

B. Alleged Civil Contemnor’s Entitlement to Transcripts

I would also hold that, to the extent transcripts of the proceedings below are available, Krieger is entitled to copies at the Commonwealth’s expense. It is “fundamental that, once established, [avenues of appellate review] must be kept free of unreasoned distinctions that can only impede open and equal access to the courts.” Williams v. Oklahoma City, 395 U.S. 458, 459, 89 S.Ct. 1818, 1819, 23 L.Ed.2d 440 (1969) (citations omitted). Consequently, where a transcript is available for a fee, the Fourteenth Amendment requires states to furnish a copy, at state expense, to indigent criminal defendants. Griffin, 351 U.S. at 18, 76 S.Ct. at 590.
The Supreme Court has also recognized a narrow category of civil cases in which the State must provide access to its judicial processes without regard to a party’s ability to pay court fees, such as transcript preparation fees. 519 U.S. at 113, 117 S.Ct. at 562; Little v. Streater, 452 U.S. 1, 13-17, 101 S.Ct. 2202, 2209-11, 68 L.Ed.2d 627 (1981) (finding that state must pay for blood grouping tests sought by indigent defendant contesting a paternity suit); Boddie v. Connecticut, 401 U.S. 371, 374, 91 S.Ct. 780, 784, 28 L.Ed.2d 113 (1971) (holding that state could not deny a divorce based on couple’s inability to pay court costs). In M.L.B., the Supreme Court held that because petitioner’s interest in a legal relationship with her child outweighed that state’s financial interest in collecting the fee, the state could not require her to pay trial record preparation fees on appeal. 519 U.S. at 121-22, 117 S.Ct. at 566. The Court noted that, to determine whether *598 an appeal fits within this narrow category, we must “inspect the character and intensity of the individual interest at stake ... and the State’s justification for its exaction.” Id. at 120-21, 117 S.Ct. at 566.
Krieger, “[l]ike a defendant resisting criminal conviction, ... seeks to be spared from the State’s devastatingly adverse action.” 519 U.S. at 125, 117 S.Ct. at 568. The individual interest at stake is the fundamental right to personal liberty. See Butts, 145 Va. at 806, 133 S.E. at 766 (noting that personal liberty is a fundamental right); Commonwealth v. Johnson, 7 Va.App. 614, 622, 376 S.E.2d 787, 791 (1989) (same). As noted earlier, the threat of deprivation of that right is equally present where the litigant faces imprisonment under the label of a civil trial.
Krieger’s interest in his personal liberty is at least as significant as M.L.B.’s right to a relationship with her child. Therefore, I would conclude that Krieger, an indigent, has a right, at state expense, to a copy of any available transcripts of the relevant proceedings. See Draper v. Washington, 372 U.S. 487, 497, 83 S.Ct. 774, 780, 9 L.Ed.2d 899 (1963).
For the foregoing reasons, I would reverse the decision of the trial court.

. In Hicks v. Feiock, 485 U.S. 624, 631, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721 (1988), the United States Supreme Court held that the Due Process Clause does not protect civil contemnors from a burden-shifting rule. Likewise, in United Mine Workers v. Bagwell, 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994), the Court held that due process does not entitle a civil contemnor to a trial by jury. However, the right to counsel was not at issue in Hicks or Bagwell. Therefore, neither case affects our decision on the issue before us. See Mead v. Batchlor, 435 Mich. 480, 460 N.W.2d 493, 499 n. 13 (1990) (holding that Hides does not provide support for the proposition that the right to counsel depends on the nature of the proceeding); Sanders v. Shephard, 185 Ill.App.3d 719, 133 Ill.Dec. 712, 541 N.E.2d 1150, 1156-59 (1989) (applying Hicks and holding that due process did not protect civil contemnor from burden-shifting rule or double jeopardy violations, but that due process entitled the civil contemnor to counsel based on Lassiter and "virtually every decision" considering the issue).

. The majority’s suggestion that a civil contemnor can easily avoid incarceration assumes the litigant's willful contumacy and the fairness of the underlying process to determine that contumacy. A purge clause only assists the civil contemnor if he has the ability to comply and the underlying order was properly determined. In other words, the unassisted civil contemnor risks an improper or unfair finding of contempt, and therefore wrongful incarceration.

. The balancing test employed in Lassiter is derived from the holding in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In Mathews, the United States Supreme Court articulated a three-factor test for determining what process is due. 424 U.S. at 334-35, 96 S.Ct. at 902-03. Courts must consider "the private interest that will be affected by the official action; ... the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest....” Id. Although the majority identifies these factors, it does not weigh or consider them.

. Manifestly, court-appointed counsel is not required in every show cause hearing. In cases where the trial court forecloses imprisonment as a punishment, the right to counsel is not absolute. See Sevier, 742 F.2d at 267 (noting that Lassiter indicated the relevant question in determining the right to counsel is whether the court elects to incarcerate).