PAMELA A. WHITTEN, Petitioner-Appellee, v. MICHAEL C. WHITTEN, Respondent-Appellant.

Third District    No. 3—97—0417

Opinion filed October 1, 1997.—Rehearing denied November 12, 1997.

Frank S. Cservenyak, Jr. (argued), of McKeown Law Office, of Joliet, for appellant.

August Santoro (argued), of Frankfort, for appellee.

JUSTICE SLATER delivered the opinion of the court:

On March 3, 1997, petitioner, Pamela A. Whitten, filed a petition for an emergency order of protection alleging that respondent, Michael C. Whitten, had physically abused their minor son, Tedmond Whitten, during regular visitation pursuant to the divorce judgment entered between the parties. After the *ex parte* hearing, the court entered an emergency order of protection on March 3, 1997, which in pertinent part prohibited abuse and suspended visitation. On March 5, 1997, respondent was served with a summons notifying him of the order of protection. He filed a motion for rehearing, an answer and an affirmative defense. The motion for rehearing was argued on March 14, 1997, and on March 19, 1997, the court denied respondent's motion and began hearing testimony. On March 24, 1997, petitioner rested and respondent filed a motion for a directed finding. On April 9, 1997, the court denied the motion for a directed finding but ordered the respondent's full rights of visitation restored as per the original judgment for divorce entered between the parties. On April 23, 1997, the court entered an interim order of protection which preserved respondent's full visitation rights per the divorce judgment but prohibited physical abuse of the minor son. The interim order was to expire by its own terms on May 23, 1997. On May 23, 1997, the court extended the interim order until May 30, 1997, at which time it did expire. Respondent filed a notice of interlocutory appeal on May 23, 1997.

On appeal, respondent alleges that: (1) the emergency order of protection fails procedural due process because of lack of proper notice, and (2) the interim order of protection, which preserved full visitation rights but prohibited abuse, was unnecessary because respondent's discipline of the minor child was reasonable.

FACTS

During the weekend of Saturday, March 1, and Sunday, March 2, 1997, Tedmond Whitten, the 10-year-old son of petitioner and respondent, was staying with respondent as part of the regular visitation per the divorce judgment. Ashley Whitten, respondent's 12-year-old daughter from his first marriage, was also staying with respondent. The children stayed out very late Saturday night at a relative's house and did not get to bed until about 1:30 a.m. on Sunday morning. At approximately 9:30 a.m. on the morning of March 2, 1997, respondent attempted to wake Tedmond so that Tedmond could get ready for his soccer game, which was at 10:45 a.m. that morning. Despite

several requests from respondent, Tedmond stated he was tired and refused to get up.

According to respondent, the minor "completely and totally defied my parental authority over him." Respondent then proceeded to strike Tedmond with a belt approximately four to six times. Respondent testified that he intended to strike Tedmond on the buttocks region only, but since Tedmond struggled, the minor child was struck on areas other than the buttocks. Respondent testified that the spanking was reasonable and administered for the sole purpose of disciplining his son pursuant to his parental obligations and that at no time was he in a rage or out of control.

Tedmond's account of the spanking differed from that of the respondent. Tedmond testified that after he refused respondent's requests to get up, respondent grabbed him by his nightgown and dragged him to the floor, ripping the nightgown. Respondent then grabbed him by the arm and struck him with a belt approximately eight times. When Tedmond struggled, respondent twisted Tedmond's arm and flung him on the bed. Respondent then got on top of Tedmond on the bed and knelt on Tedmond's legs, causing pain to the minor child. Respondent continued to strike Tedmond, making contact with Tedmond approximately 10 more times. The photographs that were in evidence showed bruises on various parts of Tedmond's body, and Tedmond testified that it hurt on his legs, his upper and lower back, his left arm and his shoulder blades. Tedmond testified that he did not receive any medical attention for his bruises. On March 21, 1997, 19 days after the spanking, Tedmond testified that most of the bruises had healed, with the exception of one bruise on his right thigh, which was exhibited in court and found to be between one-fourth to one-half inch in diameter.

Ashley Whitten testified that she slept in the same room as Tedmond and that respondent asked her to leave the room prior to striking Tedmond. Although she did not see the spanking, she heard 9 or 10 slaps accompanied by Tedmond's screams. After the spanking, Ashley testified that respondent came downstairs with a belt in his hand and a fearsome and angry expression on his face. She also testified that Tedmond showed her a welt on his leg.

Mark A. Bickle, Tedmond's soccer coach, testified that on the morning of March 2, 1997, he saw Tedmond curled up in a corner. Tedmond was crying and very upset, and he told the coach he had been spanked for not wanting to get up. Tedmond showed Mr. Bickle the red mark on his thigh.

Petitioner testified as to the foundational elements of the photographs that she took of Tedmond's bruises. She testified the

photographs were taken at approximately 12:15 p.m. on March 2, 1997, the day of the spanking.

## ANALYSIS

A threshold determination is whether this court has jurisdiction to hear respondent's interlocutory appeal. A reviewing court has the obligation to examine its jurisdiction and dismiss the appeal if the requisite jurisdiction is lacking. *Shanklin v. Hutzler*, 277 Ill. App. 3d 94, 660 N.E.2d 103 (1995). Respondent claims that jurisdiction vests in this court pursuant to Illinois Supreme Court Rule 307(a)(1) governing interlocutory appeals. 155 Ill. 2d R. 307(a)(1). Petitioner argues, however, that respondent's appeal is moot because the interim order of protection expired of its own terms on May 30, 1997.

■ A case on appeal becomes moot when the issues involved in the circuit court no longer exist because events occurring after the filing of the appeal make it impossible for the appellate court to grant effective relief. *In re R.V.*, 288 Ill. App. 3d 860, 865, 681 N.E.2d 660 (1997), citing *In re A Minor*, 127 Ill. 2d 247, 537 N.E.2d 292 (1989). Here, the interim order of protection was set to expire of its own terms on May 23, 1997, but was extended by court order until May 30, 1997. On May 30, 1997, the court refused to further extend the order and it thus expired.

Even if we found that the expiration of the order of protection rendered this appeal formally moot, the issues raised by respondent may still be reviewed under one of the exceptions to the mootness doctrine. A case that is considered moot may still be subject to review if it involves a question of great public interest. *In re R.V.*, 288 Ill. App. 3d at 865, citing *In re A Minor*, 127 Ill. 2d 247, 537 N.E.2d 292. In other words, if (1) the moot question is public in nature, (2) it is desirable to provide an authoritative determination so as to offer guidance for public officers, and (3) it is likely that the question will reappear, then it is incumbent upon the reviewing court to review the moot question on its merits. *In re R.V.*, 288 Ill. App. 3d at 865, citing *In re A Minor*, 127 Ill. 2d 247, 537 N.E.2d 292.

■ In the instant case, the interests involved are of public concern. The Illinois Domestic Violence Act of 1986 (the Act) addresses a grave societal problem and it is of public interest that the underlying purposes of the Act be achieved. 750 ILCS 60/217(a)(3) (West 1996). This can only be accomplished if courts properly apply the requirements of the Act. Given the public interest in protecting victims of domestic violence, and the likelihood that this question will reappear, we find it desirable to clarify and provide an authoritative determination of what the Act requires prior to issuance of an *ex parte*

emergency order of protection. Having decided that this matter is properly before this court on appeal, we now address the merits of respondent's contentions.

■ Respondent first contends that the emergency order of protection failed to meet the procedural due process requirements of the Illinois Domestic Violence Act for lack of proper notice. 750 ILCS 60/ 217(a)(3) (West 1996). Specifically, he contends that petitioner failed to file affidavits showing good cause why the emergency order should issue without prior notice to respondent.

The Illinois Domestic Violence Act provides for the issuance of emergency orders of protection if petitioner satisfies certain requirements. Section 217(a) of the Act provides in pertinent part:

"An emergency order of protection shall issue if petitioner satisfies the requirements of this subsection *for one or more of the requested remedies.* For each remedy requested, petitioner *shall establish that*:

There is good cause to grant the remedy, regardless of prior service of process or of notice upon the respondent, because:

\*\*\* the harm which that remedy is intended to prevent would be likely to occur if the respondent were given any prior notice, or greater notice than was actually given, of the petitioner's efforts to obtain judicial relief." (Emphasis added.) 750 ILCS 60/217(a)(3)(i) (West 1996).

The plain language of the Act does not require that actual affidavits be attached to the petition. Instead, the Act requires that the petitioner show good cause to grant the remedy without prior notice to respondent. The manner in which good cause can be shown is not specified in the Act.

Furthermore, in order to promote the underlying purposes of the Illinois Domestic Violence Act, the legislature provided in section 102 that the Act shall be liberally construed and applied. 750 ILCS 60/102 (West 1996). Included among the purposes of the Act is recognition that "the legal system has ineffectively dealt with family violence in the past" (750 ILCS 60/102(3) (West 1996)), and to "[s]upport the efforts of victims of domestic violence to avoid further abuse by promptly entering and diligently enforcing court orders which prohibit abuse and, when necessary, reduce the abuser's access to the victim" (750 ILCS 60/102(4) (West 1996)).

Respondent cites *Sanders v. Shephard*, 185 Ill. App. 3d 719, 541 N.E.2d 1150 (1989), for the proposition that procedural due process in the Act requires "affidavits that demonstrate exigent circumstances justifying entry of an emergency order without prior notice." *Sanders*, 185 Ill. App. 3d at 727, 541 N.E.2d at 1155. We agree that

petitioner must provide proof of exigent circumstances that warrant the issuance of an emergency order without prior notice to respondent. We disagree, however, with the undue emphasis placed by respondent on petitioner's failure to attach a separate affidavit when exigent circumstances were evident from the sworn allegations in the verified petition. We believe the *Sanders* court did not intend this result and properly emphasized the fact that the showing of exigent circumstances was the critical factor and not the manner in which good cause was shown. "As noted above, procedural due process with respect to the issuance of an emergency protection order does not require prior notice to a respondent where *there is a showing of exigent circumstances.*" (Emphasis added.) *Sanders*, 185 Ill. App. 3d at 728, 541 N.E.2d at 1156.

This court's independent research has disclosed two other cases addressing the petitioner's burden of showing good cause to justify the issuance of an *ex parte* emergency order of protection. See *In re Marriage of Los*, 229 Ill. App. 3d 357, 593 N.E.2d 126 (1992) (the emergency order was not based on a showing of exigent circumstances and, further, the petition was not supported by an affidavit demonstrating exigent circumstances); *In re Marriage of Gordon*, 233 Ill. App. 3d 617, 599 N.E.2d 1151 (1992) (neither the affidavit nor the proof demonstrated exigent circumstances). These cases properly placed the emphasis on the showing of exigent circumstances, rather than the manner in which good cause was shown.

Here, petitioner and her minor son, Tedmond, appeared in court on March 3, 1997, with photographs of the bruises and welts on Tedmond's body. Petitioner's sworn allegations of the abusive incident are contained in the petition, and petitioner's signature of verification attests to the truth of the statements contained in the petition. Petitioner also stated that she feared respondent would retaliate against the child and/or her if he were given notice.

Given legislative direction to liberally construe the Act, and the fact that affidavits are not specifically required by the Act, we find that petitioner's verified petition, sworn testimony and pictures were sufficient proof of exigent circumstances justifying the issuance of the emergency order of protection without prior notice to respondent. Petitioner's failure to attach a separate affidavit to her verified petition did not violate respondent's procedural due process rights. Petitioner's showing of good cause was attested to and verified in her petition, and the court found sufficient basis to issue an emergency order of protection.

Respondent next contends that the circuit court erred in entering the interim order of protection on April 23, 1997, which preserved

full visitation rights but prohibited physical abuse. Specifically, respondent contends that his conduct was reasonable and not abusive because (1) the spanking was administered for disciplinary reasons, (2) his conduct lacked viciousness, and (3) there is no evidence of irreparable harm or continued abuse.

■ Section 103 of the Illinois Domestic Violence Act defines abuse as follows:

" 'Abuse' means physical abuse, harassment, intimidation of a dependent, interference with personal liberty or willful deprivation but does not include reasonable direction of a minor by a parent or person *in loco parentis*." 750 ILCS 60/103(1) (West 1996).

■ It is axiomatic that this court will not disturb the lower court's finding that respondent's conduct was abusive unless the court clearly abused its discretion. In considering whether the court abused its discretion, the question is not whether a reviewing court agrees with the trial court. *In re Marriage of Hall*, 278 Ill. App. 3d 782, 785, 663 N.E.2d 430 (1996), citing *In re Marriage of Moore*, 251 Ill. App. 3d 41, 621 N.E.2d 239 (1993). Instead, an abuse of discretion occurs only where no reasonable person would take the view adopted by the court. *Hall*, 278 Ill. App. 3d at 785, citing *In re Marriage of Click*, 169 Ill. App. 3d 48, 523 N.E.2d 169 (1988).

■ In the present case, the circuit court weighed the evidence and the credibility of witnesses. Specifically, the court saw the color photographs of the bruises and welts on Tedmond's body; heard the testimony of respondent, who testified that he did in fact repeatedly strike Tedmond with a belt and that under a similar set of circumstances he would strike Tedmond again with a belt; heard the testimony of Tedmond, who described the viciousness of the beating; heard Ashley's corroborating testimony that respondent seemed angry and fearsome after the beating and that she saw the welt on Tedmond's leg; and heard the testimony of the soccer coach, who also testified to seeing a red mark on Tedmond's thigh. Taken together, this was sufficient evidence allowing the court to find that respondent's conduct exceeded reasonable discipline of a minor child and was in fact physical abuse as defined in the Illinois Domestic Violence Act. We conclude that the court did not abuse its discretion in entering the interim order of protection.

For the reasons stated above, the judgment of the circuit court of Will County is affirmed.

Affirmed.

LYTTON, P.J., and HOMER, J., concur.