NO. 4-98-0233

November 25, 1998

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

CHERYL L. SHIELDS, ) Appeal from

Petitioner-Appellee,     ) Circuit Court of

          v. ) Menard County

JOHN R. FRY,       ) No. 97OP62

          Respondent-Appellant. ) 

              ) Honorable

                    )    M. Carol Pope,

                               )    Judge Presiding.

_________________________________________________________________

PRESIDING JUSTICE GARMAN delivered the opinion of the court:

On October 7, 1997, petitioner Cheryl L. Shields filed a petition in the circuit court of Menard County requesting an order of protection against her former boyfriend, respondent John R. Fry.  She alleged in her petition that on September 28, 1997, respondent had called her on her cellular phone after seeing her driving toward Petersburg, where he lives.  Respondent "invited" her to stop by.  She unplugged the phone.  Petitioner alleged that the local sheriff had twice previously requested that respondent not call petitioner.  The trial court denied petitioner's request for an 
ex
 
parte
 order of protection and set the petition for hearing.   Petitioner testified at the hearing that her relationship with respondent ended in January 1997.  She tried to remain friends with him until April 1997.  Respondent had called her home and left messages on her answering machine proclaiming his love for her.  He had also left letters on her car or in her mailbox.  In June or July 1997, she asked respondent to stop putting letters on her car.  She received at least two more letters after that request.  Later in July 1997, she asked the local sheriff to call respondent.  She has not received any more letters since then but, on July 31, 1997, she received roses from respondent while at work, which made her very angry.  This happened after respondent had quizzed her brother about whether petitioner was in a relationship with anyone else.  She has also received three telephone messages from respondent since contact­ing the sheriff.  In the messages, respondent stated that he loved her.  He said he was grateful that she was attending church and that it "did his heart good" that he had learned so much about love from church.  The last message was a response to a greeting on her answering machine that said she did not want to receive any more messages from respondent.  He replied that she must be missing him, because "this behavior" of hers was indicative of someone who was sorry they gave up a relationship.  Petitioner also testified that respondent positions himself in places where he knows he will see her.  In June 1997, respon­dent appeared at one of her son's baseball games and tried to talk to her.  After a brief conversa­tion, respondent left.  

Respondent testified that until the September 28, 1997, contact, he had complied with petitioner's wishes as related to him by the sheriff's two calls.  On that date
, he had seen peti­tioner driving near his house. He assumed that she had driven by to see him or spy on him.  He called her on her cellular phone and left a message, stating that she was welcome to stop by any time.  In the past, when he and petitioner would break up, he would send cards, letters, and flowers and they would get back together.  Respondent admitted leaving cards or letters on petitioner's car at work approximately five times.  When the sheriff called him the first time and asked him to stop, he did.  The sheriff said that if he wanted to contact petitioner, he should use the mail.  Since then, he has sent her one package by mail that contained audio­tapes,
 videotapes, and other items that concerned their relationship.  He would also call about every other week and leave a message on her answering machine, stating that he missed her and loved her.  After that, he got a second call from the sheriff.  

Respondent testified that since September 28, 1997, he has contacted petitioner by telephone twice.  He would also call her house at times he believed she was not there and listen to her voice on the answering machine.  He claimed he was trying to avoid seeing petitioner and denied positioning himself in places he knew petitioner would frequent.  Respondent admitted giving petitioner's brother two notes to give to her after being served with the petition for order of protection.  He took the notes back before they were delivered to petitioner.  

On questioning by the trial court, petitioner denied driving by respondent's house on September 28, 1997.    

The trial court entered an order of protection, finding that petitioner had been abused by respondent and that respondent's actions would likely cause harm or continued abuse unless prohibit­

ed.  Respondent was prohibited from harassing, stalking, or interfering with the personal liberty of petitioner.  He was also ordered to stay away from petitioner, her home and place of employment, and her son's school.  He was ordered to have no contact with petitioner, including written, telephone, or third-

party contact.  

Respondent filed a motion to reconsider, alleging that the evidence did not support the order.  The trial court denied the motion and this appeal followed.  

On appeal, respondent argues that the trial court abused its discretion in issuing the order of protection.  Section 214(a) of the Illinois Domestic Violence Act of 1986 (Act) (750 ILCS 60/214(a) (West 1996)) provides that an order of protection shall issue if the court finds the petitioner has been abused by a family or household member.  "Abuse" is defined by the Act as physical abuse, harassment, intimidation of a dependent, interference with personal liberty, or wilful deprivation.  750 ILCS 60/103(1) (West 1996).  "Harassment" means knowing conduct that is not necessary to accomplish a purpose that is reasonable under the circumstances, would cause a reasonable person emotional distress, and does cause such distress to the petitioner.  750 ILCS 60/103(7) (West 1996).  A trial court's finding that a respondent's behavior has been abusive will not be disturbed on review absent an abuse of discretion.  
Whitten v. Whitten
, 292 Ill. App. 3d 780, 787, 686 N.E.2d 19, 23 (1997); see also 
In re Marriage of Lichtenstein
, 263 Ill. App. 3d 266, 269, 637 N.E.2d 1258, 1261 (1994) (trial court has broad discretion in determining whether above occurred within meaning of Act).  An abuse of discre­tion occurs only where no reason­able person would take the view adopted by the trial court.  
Whitten
, 292 Ill. App. 3d at 787, 686 N.E.2d at 23.

Respondent contends that his conduct did not constitute harassment within the meaning of the Act.  He notes that petitioner did not testify to any threatening conduct on his part.  He characterizes his letters and telephone answering machine messages as merely reflecting his love for petitioner.  He does not believe this conduct was offensive.    

Respondent's argument in essence is that he cannot under­

stand why petitioner does not appreciate his affec­tions.  It is not a function of this court to make him understand.  Petitioner has stated unequivocally to respondent that she wants no contact with him.  She asked him to stop leaving letters on her car.  Respondent continued to do so.  Petitioner was forced to twice ask the local sheriff to request that respondent stop contacting her.  Although the letters stopped, respondent sent roses to petitioner at her place of employment.  He left messages on petitioner's telephone answering machine professing his love for her.  

Petitioner has a right to end her relationship with respon­dent, a decision that he must respect.  "Abuse" under the Act includes harassment.  Harassment results from intentional acts that cause someone to be worried, anxious, or uncomfortable.  
People v. Zarebski
, 186 Ill. App. 3d 285, 294, 542 N.E.2d 445, 452 (1989).  Respondent's conduct toward petitioner is "not necessary to accomplish a purpose that is reasonable under the circumstanc­es."  750 ILCS 60/103(7) (West 1996).  Petitioner has made it abundantly clear that she wants no further contact with respondent; thus, respondent's purpose of reestablishing the parties' relation­ship is not reasonable.  His actions, therefore, constitute harassment under the Act.  There is also sufficient evidence in the record to show that respondent's actions caused emotional distress to petitioner.  She testified to feeling angry when respondent sent roses to her at work.  She asked him to stop calling her and leaving letters on her car.  She even resorted to leaving a message on her telephone answering machine telling him that she wanted no further messages from him.  When these measures did not stop respondent from contacting her, she twice called the sheriff to enlist his help.  It is apparent, then, that respondent's actions made petitioner upset and uncomfortable.   We therefore conclude that the evidence fully supported the trial court's order of protection.

Accordingly, the trial court's order is affirmed.

Affirmed.

STEIGMANN and McCULLOUGH, JJ., concur.