2021 IL App (1st) 201027-U

THIRD DIVISION
October 27, 2021

No. 1-20-1027

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| MYKA MARTINEZ | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | 19 OP 76673 |
| | ) | |
| VAIBHAV SINGH, | ) | Honorable |
| | ) | Levander Smith, Jr. |
| Respondent-Appellant. | ) | Judge Presiding |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Gordon and Justice Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*: Reversed. Court's failure to make required statutory findings rendered order of protection invalid.

¶ 2    On February 25, 2020, petitioner Myka Martinez received a one-year plenary order of protection against respondent, Vaibhav Singh, under the Domestic Violence Act of 1986.

¶ 3    Vaibhav was roommates with Jonathan Schneider; Myka is a transgender woman who is friends with, and a former roommate of, Jonathan. Myka lived in the apartment that Vaibhav and Jonathan shared. According to Myka, she left the apartment shortly after Vaibhav moved in because of his hostility toward her.

1

¶ 4     We take the following from Myka's testimony at the hearing on the order of protection. In July 2020, Myka was at the apartment to collect some things that had been stored there since she moved out. She chose this day because she thought Vaibhav would not be there. But he was. Vaibhav became incredibly hostile—making transphobic slurs and physically threatening her because she was in the apartment. According to Myka, when she refused to leave, Vaibhav said, "Well, then I will have to call my friend to come over and hit that thing and then we will see if it still wants to stay."

¶ 5     Vaibhav, for his part, testified that this was a "complete lie." He claimed he was trying to study and just wanted to know how long Myka and Jonathan would be moving things—because the noise was distracting. Vaibhav claimed that it was, in fact, Myka who "abused" him by telling him to "f--- off."

¶ 6     Early in his testimony, Vaibhav referred to Myka at times as "he" or "they." The court sternly reminded him that the proper reference was "she," "her," or "Ms. Martinez."

¶ 7     While Myka was prepared to call Jonathan as a witness, the court stated that it "[did] not need to hear from [him]." The court found that Myka "proved her case by a preponderance of the evidence and that [Vaibhav] was not at all credible." The court continued:

> "Sir, I find it very offensive that you, under oath, would come to this court and make the claim that none of this happened. I mean, just by the way that you addressed the petitioner out of utter disrespect just lets this Court know that indeed what she was saying was right on the money. It was accurate."

¶ 8     The court notably added: "With respect to any potential consequences with your employer, I suggest that you check with your employer about that if you so wish. But this court

is not required to consider a person's employment or status in the community before entering [this order of protection]."

¶ 9     On February 25, 2020, the court entered an order prohibiting Vaibhav from any contact with Myka. The order remained in effect until "1 [year] following the date of entry of such Order, such expiration date being 2-25-2021."

¶ 10     Within 30 days, Vaibhav moved for reconsideration. The trial court denied that motion on August 28, 2020. Vaibhav timely appealed. He primarily raises two points of error that we will discuss later.

¶ 11     But first, we must address the question of mootness. We deem an appeal moot "where it presents no actual controversy or where the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party." *In re J.T.*, 221 Ill. 2d 338, 349-50 (2006).

¶ 12     Our analysis starts with a brief procedural timeline of this matter. We know from the record that the order of protection was entered on February 25, 2020. Vaibhav could have immediately appealed under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), as "[a]n order of protection is injunctive in substance." *In re Marriage of Sanchez and Sanchez-Ortega*, 2018 IL App (1st) 171075, ¶ 34; see Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017) ("An appeal may be taken to the Appellate Court from an interlocutory order * * * granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction.").

¶ 13     Instead, he timely moved for reconsideration before the trial court. Due to the Covid-19 pandemic (and one issue with service of process), that motion, filed in late March, was not heard and denied until August 28, 2020. At that point, as well, Vaibhav could have appealed under Rule 307(a)(1) and sought expedited consideration, though he was not required to do so. See *In*

*re Haley D.*, 2011 IL 110886, ¶ 63 ("A party who wishes to challenge [an interlocutory order] is not, however, required to bring an immediate interlocutory appeal under Rule 307. Rather, he or she may wait until final judgment has been entered in the case and challenge the termination order at that time."); *In re K.B.*, 2019 IL App (4th) 190496, ¶ 52 (under Rule 307, appellant may (1) file notice of appeal within 30 days of order or (2) wait until final judgment or ruling on timely post-judgment motion).

¶ 14    Vaibhav timely appealed but not under Rule 307; he filed a garden-variety notice of appeal from a final judgment and did not seek expedited consideration. As a *pro se* litigant navigating these appellate waters, he may have been unaware of his options.

¶ 15    In any event, he filed a traditional notice of appeal in September 2020; the record was filed in November; and he filed his opening brief on December 24, 2020—a mere two months before the one-year order of protection was scheduled to expire. We then awaited Myka's appearance and appellee's brief, which never came. Finally, on May 10, 2021, after giving Myka more than sufficient time to appear and file a brief—even accounting for difficulties caused by the Covid-19 pandemic—we took the appeal on Vaibhav's brief only.

¶ 16    Many orders of protection that reach us on appeal are litigated by *pro se* litigants on one or both sides. And we often see this kind of time lag, because the *pro se* litigants may not understand that they have mechanisms at their disposal to seek expedited consideration. It is not unusual to find ourselves reviewing an order of protection that, as here, is no longer in effect. And in many such cases, we decline review, finding the appeal to be moot. See *Landmann v. Landmann*, 2019 IL App (5th) 180137, ¶ 11 (issues raised "are moot because the plenary order of protection expired"); *Hendrick-Koroll v. Bagly*, 352 Ill. App. 3d 590, 592 (2004) ("because the plenary order of protection expired on January 1, 2004, the issues respondent raises on appeal are

4

moot."); *Creaser v. Creaser*, 342 Ill. App. 3d 215, 219 (2003) (once order of protection expires, respondent is not " 'subject to a court order' " and any decision will be "essentially advisory."); see also *Whitten v. Whitten*, 292 Ill. App. 3d 780, 784 (1997) (finding expired order of protection arguably moot).

¶ 17 But we will review this appeal, regardless, for two reasons. The first is that we may consider this appeal under the "public interest" exception to the mootness doctrine. Under that exception, a court may review a moot issue on the merits if " '(1) the moot question is public in nature, (2) it is desirable to provide an authoritative determination so as to offer guidance for public officers, and (3) it is likely that the question will reappear.' " *Landmann*, 2019 IL App (5th) 180137, ¶ 11 (quoting *Whitten*, 292 Ill. App. 3d at 784).

¶ 18 That exception applies here. As we recently noted, the Domestic Violence Act of 1986 "addresses issues of great public interest, and its purposes can only be accomplished if the courts properly apply the statutory requirements. [Citation.] Furthermore, questions as to the Act's requirements are likely to reappear, and we find it desirable to offer guidance as to those requirements. As such, we will address the merits of this case under the public interest exception to the mootness doctrine." *Id.* ¶ 12.

¶ 19 The second reason not to apply the mootness doctrine is that we believe we are still able "to grant effectual relief." *In re J.T.*, 221 Ill. 2d at 349-50. Even if the order of protection no longer restrains Vaibhav's liberty or conduct, the effects of the order live on. People often must disclose whether they have been the subject of an order of protection on applications for employment, professional licensure, school, firearm ownership, even sometimes on an application to rent an apartment. Vaibhav provides an example of his own—he says he is in this country on a "non-immigrant, F-1 student visa," and his immigration status could be adversely

5

affected by the issuance of this protective order. Anything involving a character-and-fitness evaluation or a background check could be implicated. We would assume that most litigants challenging an order of protection would find it effectual, indeed, were they were to overturn it on appeal, even long after the order's expiration.

¶ 20 We will thus review the merits of this appeal. Vaibhav raises several arguments, including that the order violated the First Amendment, and the trial court failed to make findings on the record as required by statute. We will always consider non-constitutional arguments first, avoiding constitutional questions when possible. See *People v. Bass*, 2021 IL 125434, ¶ 30.

¶ 21 So we begin with Vaibhav's argument that the trial court failed to make the required findings on the record, rendering the order of protection invalid. We review *de novo* whether the trial court made the requisite findings on the record, meaning we review the question without any deference to the trial court. *People v. Lawrence*, 2020 IL App (1st) 171399, ¶ 35.

¶ 22 At the close of the hearing, the trial court said little of substance before ruling in favor of Myka and against Raibhav. The only substantive statement it made concerning the proofs was that "the petitioner proved her case by a preponderance of the evidence and *** the respondent was not at all credible."

¶ 23 Section 214(c) of the Domestic Violence Act of 1986 requires that, before entering an order of protection:

"[T]he court shall makes its findings in an official record or in writing, and shall at a minimum set forth the following:

(i) *That the court has considered the applicable relevant factors described in paragraphs (1) and (2) of this subsection.*

(ii) Whether the conduct or actions of respondent, unless prohibited, will likely

cause irreparable harm or continued abuse.

(iii) Whether it is necessary to grant the requested relief in order to protect

petitioner or other alleged abused persons." (Emphasis added.) 750 ILCS

60/214(c)(3) (West 2018).

¶ 24    One of the factors in paragraph (2) of that subsection is that the "court shall consider

relevant factors, including but not limited to * * * (ii) the effect on the party's employment." 750

ILCS 60/214(c)(2)(ii) (West 2018).

¶ 25    Here, as noted earlier, the trial court not only failed to expressly consider the effect of the

order of protection on Vaibhav's employment—the court expressly *refused* to do so: "With

respect to any potential consequences with your employer, I suggest that you check with your

employer about that if you so wish. But this court is not required to consider a person's

employment or status in the community before entering [this order of protection]."

¶ 26    The failure to follow the requirements of Section 214(c)(3) requires us to reverse the

order of protection. See *Lawrence*, 2020 IL App (1st) 171399, ¶ 37 ("Because the trial court did

not comply with section 214, we reverse the order of protection * * *."); *People v. Brand,* 2020

IL App (1st) 171728, ¶ 54 ("We will reverse the trial court's entry of an order of protection if it

fails to make the required findings."); *Landmann*, 2019 IL App (5th) 180137, ¶ 19; *Hendrick-

Koroll*, 352 Ill. App. 3d at 594 (collecting cases: "The failure to make the required findings is

reversible error."); *People ex rel. Minteer v. Kozin*, 297 Ill. App. 3d 1038, 1043 (1998) ("we

reverse the entry of the order of protection on the basis that the trial court failed to meet its

statutory obligation to make specific findings prior to entering an order of protection under the

7

Act."); *In re Marriage of Healy*, 262 Ill. App. 3d 596, 602 (1994) (reversed for failing to comply with "specific statutory mandate to make appropriate findings.").

¶ 27    Here, there is no question that the court failed to make the required findings during the initial hearing on the order of protection, or in its written order. The court stated that it had "considered all the evidence" and found that Myka proved her case, but nothing regarding the obligatory findings of subsection (c)(3).

¶ 28    Even if we believed that the trial court did, in fact, silently take such considerations into account, we still could not uphold the order unless those findings were expressly made on the record as required by the statute. See *Landmann*, 2019 IL App (5th) 180137, ¶ 19 ("We have little doubt that the trial court considered the evidence as it related to the findings required by section 214(c)(3)(i), but there is simply no record of this finding available for our review. Therefore, we reverse the circuit court judgment and vacate the order of protection based on the court's failure to make the specific findings required by the Act."). But here, we cannot even go that far. We cannot presume that the court considered the effect of this order on Vaibhav's employment when the court specifically stated that it was not required to consider it and did not do so.

¶ 29    In its ruling denying the motion to reconsider, the court did explain its findings on two of the required factors (future harm and need to protect). Two problems. First, those findings came *after* the order of protection was entered, not before; but second and more critically, nothing the court said in ruling on the motion to reconsider cured its failure to state on the record that it "considered the applicable relevant factors described in paragraphs (1) and (2) of this subsection"—particularly the effect on Vaibhav's employment. See 750 ILCS 60/214(c)(2)(ii), (c)(3)(i) (West 2018).

8

¶ 30    Nothing we have said above should be read to condone the conduct and remarks attributed to Vaibhav by the trial court, after hearing the evidence. But we are required to construe this statute as written, and both the language itself and the case law interpreting it have left no doubt that the trial court's order of protection cannot stand if the trial court does not make the required findings on the record. And particularly here, where the court expressly disavowed any requirement to make such a finding, the resulting order cannot stand.

¶ 31    The judgment of the circuit court is reversed.

¶ 32    Reversed.