NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230311-U

NO. 4-23-0311

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 25, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| CHELSEA L. WATKINS, | ) | Appeal from the |
|     Petitioner-Appellee, | ) | Circuit Court of |
|     v. | ) | Scott County |
| NICHOLAS R. WATKINS, | ) | No. 23OP4 |
|     Respondent-Appellant. | ) | |
| | ) | Honorable |
| | ) | David R. Cherry, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE DeARMOND delivered the judgment of the court.
Justices Turner and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court reversed the trial court's judgment granting an order of
protection and vacated the order because the trial court erred in denying
respondent's motion to dismiss the petition.

¶ 2    Petitioner, Chelsea L. Watkins, filed a petition seeking an order of protection for
herself and on behalf of the parties' children against respondent, Nicholas R. Watkins. The trial
court granted the petition and entered the order of protection. Nicholas appeals, arguing, in
pertinent part, the court erred in denying his motion to dismiss the petition under section
2-619(a)(3) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(3) (West 2022)),
because Chelsea's separate petition for an order of protection involving the parties and the same
cause was still pending in a neighboring county. We hold the court erred in denying Nicholas's
motion to dismiss the petition for an order of protection. Accordingly, we reverse the court's
judgment and vacate the order of protection.

¶ 3                                    I. BACKGROUND

¶ 4          The parties are involved in a marriage dissolution proceeding filed in Morgan

County, Illinois. The parties have two children together, M.W. (born January 2012) and S.W.

(born September 2014). On July 2, 2021, the trial court entered an agreed order in the marriage

dissolution case, providing for alternating parenting time between the parties on a weekly basis.

¶ 5          On February 17, 2022, Chelsea filed a petition seeking an emergency order of

protection in Morgan County case No. 22-OP-41. In her petition, Chelsea sought an order

prohibiting Nicholas from engaging in acts of abuse and from having contact with Chelsea and

the children. The petition in case No. 22-OP-41 was still pending during the events at issue in

this case.

¶ 6          On January 27, 2023, Chelsea filed another petition for an order of protection

against Nicholas, on behalf of herself and the children, in Morgan County case No. 23-OP-25.

The trial court dismissed the petition on February 3, 2023, finding the allegations in the petition,

even if true, were insufficient to grant relief.

¶ 7          On the same day, February 3, 2023, Chelsea filed the petition for an order of

protection at issue in this case in Scott County. Chelsea sought an emergency and plenary order

of protection against Nicholas for herself and on behalf of the children. The Scott County circuit

court entered an emergency order of protection.

¶ 8          On February 7, 2023, Nicholas filed a motion to dismiss the petition or,

alternatively, to vacate the emergency order and transfer the case to the Morgan County circuit

court. The trial court denied Nicholas's motion and extended the emergency order. Nicholas filed

a motion requesting a conference between the judges in Morgan County and Scott County

pursuant to Seventh Judicial Circuit Court Rule 309 (May 1, 2019), given the cases filed in those

counties both related to child custody. Nicholas asserted the issues of child custody and parenting time should be decided in the marriage dissolution proceeding filed in Morgan County. The judges assigned to the cases in Morgan County and Scott County conferred, but the record does not reflect any agreement.

¶ 9 Nicholas then filed another motion to dismiss Chelsea's petition filed in Scott County under sections 2-619(a)(3) and (a)(4) of the Code (735 ILCS 5/2-619(a)(3), (a)(4) (West 2022)), alleging, in pertinent part, when Chelsea filed her petition in this case, there was already a separate petition for an order of protection filed by her in Morgan County case No. 22-OP-41. Nicholas attached a docket sheet for case No. 22-OP-41 and asserted the Scott County petition should be dismissed because another action was pending between the same parties for the same cause. He also attached the dismissal order for case No. 23-OP-25, showing the Morgan County circuit court dismissed the petition for an order of protection on February 3, 2023, the same day Chelsea filed her petition in this case in Scott County.

¶ 10 The parties appeared for a hearing on the Scott County petition on March 22, 2023. At the outset of the hearing, the trial court indicated the order of protection would remain in place until the parties came to an agreement in the divorce case on how the children "are going to be taken care of." The court stated, "I'm pretty adamant about no visitation or supervised visitation, which should be decided in the divorce case, not by me." The court stated, "I think [the children] need to be protected, and I'm not about to dismiss an Order of Protection until you've figured out something along those lines in the divorce case."

¶ 11 The trial court then addressed Nicholas's motion to dismiss, initially stating, "As right as you are, ***, you'll have to go to the Appellate Court. Which is a waste of time ***." Nicholas informed the court of the separate petition for an order of protection still pending in

Morgan County case No. 22-OP-41. Nicholas argued the instant Scott County petition should be dismissed under section 2-619(a)(3) because an action was already pending against Nicholas seeking an order of protection for Chelsea and the children in case No. 22-OP-41. Nicholas submitted a copy of the petition filed in case No. 22-OP-41 to the court. The court denied Nicholas's motion to dismiss, reiterating, "You need to do something in the divorce case to get me to dismiss that." The court stated it believed there were grounds for a plenary order based upon what it heard at the time of the request for an emergency order. The court stated, "I still believe that there are grounds, and if you don't want an emergency order extended, I'll enter a plenary order today if, in fact, the petitioner wants to proceed with a plenary hearing or a plenary order."

¶ 12     The parties then proceeded with the hearing. Chelsea called the parties' daughter, M.W., to testify. She testified she was 11 years old. On one occasion, Nicholas was trying to comb her brother S.W.'s hair and she overheard "[c]uss words" and her brother "holler." Nicholas later told M.W. he did not choke S.W. and asked her not to tell anyone. M.W. also testified on another occasion, she and Nicholas attempted to retrieve kittens from their basement, and he held her by the neck to get her to go to her room because she started crying. She further testified she did not want to go to Nicholas's house because he had been "rude," he would "hurt[ ]" her and S.W., he would cuss and scream loudly, and he would send S.W. to bed for a long time. M.W. admitted "sometimes we don't behave." She also testified Nicholas sometimes put their dog, Max, on the ground and placed his hands by Max's neck.

¶ 13     On cross-examination, M.W. testified Nicholas held Max down by his neck when he started "sniffing a lot" and nipping or biting. When they attempted to retrieve the kittens from the basement, she explained Nicholas "kind of just, like, took my neck and pushed me forward."

- 4 -

She acknowledged she did not know what happened when Nicholas was trying to comb S.W.'s hair, but she heard Nicholas yell and S.W. "screech." Nicholas later said he was sorry, he would not do it again, and not to tell anyone.

¶ 14 Chelsea testified the parties exchange the children at the Jacksonville police station. During an exchange in 2021, Nicholas wanted to discuss an education issue and he blocked her from entering her car when she declined to discuss it at the time. He allowed her to get into the car when she mentioned there were surveillance cameras in the parking lot. Chelsea described Nicholas's voice as angry and loud during the incident, and she testified the children looked fearful and upset. Additionally, following the entry of the temporary order in the divorce case, Nicholas "frequently" threatened to not return the children and stated he was going to take them away, causing the children to be upset when it happened in front of them. On one occasion, Nicholas also stopped her phone call with the children when she said something he disagreed with. Chelsea testified Nicholas's behavior had "severely impacted" her mental health, causing her to miss several days of work and seek treatment at a hospital.

¶ 15 On cross-examination, Chelsea admitted the alleged abuse was occurring at the time she agreed to the temporary order in the divorce case, providing for alternating parenting time on a weekly basis. She agreed to the temporary order despite the alleged abuse by Nicholas. Chelsea also admitted she had an "outburst" in court during a hearing on January 26, 2023, on an order of protection sought by Nicholas on behalf of the children against Chelsea's boyfriend. She admitted she was escorted out of the courtroom by a bailiff, and she filed a petition for an order of protection on behalf of herself and the children against Nicholas the next day. Chelsea's petition was dismissed by the Morgan County circuit court in case No. 23-OP-25. Chelsea further acknowledged she offered Nicholas additional time with the children at a time when she

also claimed he abused them. On redirect examination, Chelsea asserted she later changed her mind on her offer of additional parenting time due to Nicholas's behavior.

¶ 16       Upon conclusion of Chelsea's testimony, the trial court stated, "For what it's worth, I'm prepared to rule at this point." Chelsea rested and the court denied Nicholas's motion for a directed finding.

¶ 17       Nicholas then testified he was trying to comb S.W.'s hair in the bathroom, and he grabbed S.W.'s shirt when he tried to leave. He denied asking the children not to tell anyone about the incident. Regarding the incident with M.W. in the basement, Nicholas explained she was in trouble and started to get angry. When she refused to go to her room, he placed his hand on the middle of her back and guided her to her room. He denied pushing M.W. Nicholas testified he only immobilized the dog to train him. He denied throwing the dog to the ground and choking him. Nicholas further testified the only time he raised his voice around the children was when he could not "break through them yelling."

¶ 18       Nicholas also denied blocking Chelsea from entering her car or from driving away during the exchange at the Jacksonville police station. He was attempting to discuss homework and homeschooling, the children were in Chelsea's car at the time, and he did not observe them being upset. Nicholas admitted he probably yelled that Chelsea could not keep ignoring this " 'stuff' " as she drove away. Nicholas denied threatening to not return the children and asserted he goes out of his way to ensure Chelsea can call them. He acknowledged, following entry of the order of protection against Chelsea's boyfriend, he stopped a call between Chelsea and the children after Chelsea "went off on how [Nicholas was] just a horrible father." Nicholas also stopped a call the following day when S.W. asked Chelsea why she told the court she did not remember anything, and Chelsea responded she "lied to the Court because I had lied to the

court." Nicholas asserted M.W.'s therapist had emphasized the parties should not say "bad stuff" in front of the children, and he thought Chelsea's conversations on those occasions were inappropriate. On cross-examination, Nicholas testified the children had been influenced by Chelsea.

¶ 19　　　　　Following Nicholas's testimony, the trial court entered the plenary order of protection, stating it did not believe either party was lying but they saw things differently, and "the only question in an Order of Protection is the state of mind of the Petitioner at the time behavior occurred which put her in fear of being harmed or her children being in danger." Nicholas asked the court to address the issue of parenting time, which the court reserved until a later hearing. The court entered the plenary order of protection to expire on May 31, 2023, and an Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) finding there was no just reason to delay enforcement or appeal of the order. Nicholas then filed a timely notice of appeal.

¶ 20　　　　　　　　　　　　II. ANALYSIS

¶ 21　　　　　　　　　　　　A. Mootness

¶ 22　　　　　Initially, we must address the mootness of this appeal because the order of protection expired by its own terms on May 31, 2023. The existence of an actual controversy is required for appellate jurisdiction, and reviewing courts will generally not decide abstract, hypothetical, or moot questions. *In re Andrea F.*, 208 Ill. 2d 148, 156, 802 N.E.2d 782, 787 (2003). An issue is moot when an actual controversy no longer exists or when events have occurred making it impossible for the reviewing court to grant effective relief. *Andrea F.*, 208 Ill. 2d at 156. Our supreme court has recognized several exceptions to mootness, including the public interest exception. *In re Deborah S.*, 2015 IL App (1st) 123596, ¶ 18, 26 N.E.3d 922. Under the public interest exception, a court may consider the merits of a moot question if (1) it is

public in nature, (2) an authoritative determination of the issue is desirable for the future guidance of public officers, and (3) the question is likely to recur. *In re V.C.*, 2022 IL App (4th) 210484, ¶ 24, 196 N.E.3d 1203.

¶ 23    We find the requirements for application of the public interest exception are satisfied in this case. Orders of protection are governed by the Illinois Domestic Violence Act of 1986 (Act) (750 ILCS 60/201 *et seq.* (West 2022)). The Act "addresses a grave societal problem," and achieving the purpose of the Act is in the public interest. *Whitten v. Whitten*, 292 Ill. App. 3d 780, 784, 686 N.E.2d 19, 22 (1997). The purpose of the Act can only be achieved if courts apply its requirements properly. *Whitten*, 292 Ill. App. 3d at 784. Importantly, this case involves the use of the Act to litigate child custody issues. The issue is likely to recur and providing guidance for public officials is in the public interest. See *Landmann v. Landmann*, 2019 IL App (5th) 180137, ¶ 12, 133 N.E.3d 117 ( "[Q]uestions as to the Act's requirements are likely to reappear, and we find it desirable to offer guidance as to those requirements."); see also *Sherwin v. Roberts*, 2023 IL App (4th) 220904-U, ¶ 43 (finding resolution of appeal was in the public interest and necessary for future litigants where petitioner misused the Act to litigate family custody issues). Accordingly, we conclude the public interest mootness exception applies in this case, and we will address the merits of the appeal.

¶ 24                          B. Parties' Contentions

¶ 25    On appeal to this court, Nicholas presents several arguments seeking reversal of the trial court's judgment. First, he argues the court erred in denying his motion to dismiss the petition under section 2-619(a)(3) of the Code (735 ILCS 5/2-619(a)(3) (West 2022)), because Chelsea's pending petition in Morgan County sought the same relief and involved the same parties as this petition filed in Scott County. Nicholas asserts the court acknowledged the merits

of his motion to dismiss when it stated, "As right as you are, ***, you will have to go to the Appellate Court. Which is a waste of time ***." Second, Nicholas contends the court deprived him of his right to a fair and impartial hearing. Nicholas argues the court's statements before and during the hearing show it prejudged the merits based on evidence presented *ex parte* when Chelsea sought the emergency order of protection. Before hearing any testimony or evidence, the court stated, among other things, "I still believe that there are grounds, and if you don't want an emergency order extended, I'll enter a plenary order today if, in fact, the petitioner wants to proceed with a plenary hearing or a plenary order." Third, Nicholas contends the court's decision granting the plenary order of protection was against the manifest weight of the evidence because Chelsea presented no arguable evidence of abuse at the hearing. Fourth, Nicholas argues the court erred by reserving the issue of his parenting time after granting the plenary order of protection.

¶ 26        Because Chelsea has not filed an appellee's brief in this case, we proceed in accordance with the principles set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 345 N.E.2d 493 (1976). When the appellee fails to file a brief, we may (1) if justice requires, serve as an advocate for the appellee and search the record for the purpose of sustaining the judgment of the trial court; (2) decide the merits of the appeal if the record is simple and the claimed errors can be decided easily without the aid of an appellee's brief; or (3) reverse the court's judgment if the appellant's brief demonstrates *prima facie* reversible error and the contentions of the brief are supported by the record. *First Capitol Mortgage Corp.*, 63 Ill. 2d at 133.

¶ 27        Here, the record is simple, at least with respect to Nicholas's claim the trial court erred in denying his motion to dismiss under section 2-619(a)(3) of the Code (735 ILCS

5/2-619(a)(3) (West 2022)). We believe the claim of error can be decided easily without the aid of an appellee's brief. Accordingly, we will proceed with our review of the merits of the appeal.

¶ 28                                                   C. Motion to Dismiss

¶ 29          In his motion to dismiss, Nicholas argued Chelsea's petition should be dismissed because her separate petition for an order of protection in Morgan County case No. 22-OP-41 was still pending. Nicholas submitted a copy of the petition filed in case No. 22-OP-41, showing Chelsea sought an order prohibiting Nicholas from having contact with Chelsea and the children. He also attached a docket sheet for case No. 22-OP-41, showing it was still pending when Chelsea filed her petition for an order of protection in this case on February 3, 2023. During the hearing on the motion to dismiss, Chelsea's attorney acknowledged the petition for an order of protection in case No. 22-OP-41 was still pending in Morgan County.

¶ 30          Under section 2-619(a)(3), an action may be dismissed when "there is another action pending between the same parties for the same cause." 735 ILCS 5/2-619(a)(3) (West 2022). The purpose of section 2-619(a)(3) is to prevent duplicative litigation. *Kellerman v. MCI Telecommunications Corp.*, 112 Ill. 2d 428, 447, 493 N.E.2d 1045, 1053 (1986). When a party files a motion under section 2-619(a)(3), the trial court has discretion to determine whether dismissal is warranted. *In re Marriage of Murugesh*, 2013 IL App (3d) 110228, ¶ 20, 993 N.E.2d 1109 (citing *Kellerman*, 112 Ill. 2d at 447). Section 2-619(a)(3) does not require automatic dismissal even when the "same cause" and "same parties" requirements are met. *Murugesh*, 2013 IL App (3d) 110228, ¶ 20. In deciding whether to grant a motion to dismiss under section 2-619(a)(3), the court should consider several factors, including "comity; the prevention of multiplicity, vexation, and harassment; the likelihood of obtaining complete relief in the foreign jurisdiction; and the *res judicata* effect of a foreign judgment in the local forum." *Kellerman*, 112

Ill. 2d at 447-48. The court's decision on a motion to dismiss under section 2-619(a)(3) is reviewed for abuse of discretion. *Davis v. Davis*, 2019 IL App (3d) 170744, ¶ 13, 144 N.E.3d 649.

¶ 31        At the hearing on the motion to dismiss, the trial court did not mention the factors from *Kellerman* when weighing whether to grant the motion. In fact, the court did not provide any real reasoning for denying the section 2-619(a)(3) motion to dismiss based on the pending action in Morgan County. The court simply stated it still believed there were grounds for an order of protection, and it expressed concern for protecting the children until some additional action could be taken in the divorce proceeding. The court, however, apparently conceded the merits of Nicholas's motion to dismiss when, prior to hearing arguments on the motion, the court stated, "As right as you are, ***, you'll have to go to the Appellate Court. Which is a waste of time ***."

¶ 32        The trial court was aware of the pending divorce case between the parties and recognized child custody and parenting time issues should be decided in that case. The court was also aware of the dismissal of Chelsea's petition for an order of protection in Morgan County case No. 23-OP-25, which was filed on the same day she filed her petition in this case in Scott County, and her pending petition for an order of protection in Morgan County case No. 22-OP-41. To say the least, the parties were involved in substantial ongoing litigation in Morgan County on the issues of child custody and parenting time. We conclude the court's denial of the motion to dismiss this case, involving the same parties and the same cause as the one still pending in Morgan County case No. 22-OP-41, undermined the purpose of section 2-619(a)(3) to prevent duplicative litigation. See *Kellerman*, 112 Ill. 2d at 447 ("Section 2-619(a)(3) is designed

to avoid duplicative litigation and is to be applied to carry out that purpose."). The court abused its discretion in denying the section 2-619(a)(3) motion to dismiss in this case.

¶ 33                           D. Misuse of the Act and Forum Shopping

¶ 34         In addition to the interest in preventing duplicative litigation, we note this case also bears comment about misuse of the Act to address child custody issues and forum shopping. While the parties' divorce proceeding was pending, Chelsea filed several petitions on behalf of the children for orders of protection against Nicholas, including the petition which was dismissed in Morgan County case No. 23-OP-25 on the same day Chelsea filed the petition in this case in Scott County. The Morgan County circuit court dismissed the petition in case No. 23-OP-25 after finding the allegations in the petition, even if true, were insufficient to grant relief. In this case, the trial court entered an order of protection conflicting with the dismissal order entered in Morgan County case No. 23-OP-25. The record, therefore, shows Chelsea was allowed to continue filing petitions in multiple counties until she obtained an order of protection on behalf of the children in this case.

¶ 35         In *Sherwin*, 2023 IL App (4th) 220904-U, we recently addressed the use of the Act to litigate child custody issues. In *Sherwin*, the trial court issued a three-month order of protection " 'to give the parties enough time to get the family case in front of [the court] and for [the court] to look at the entirety of the circumstances.' " *Sherwin*, 2023 IL App (4th) 220904-U, ¶¶ 29, 72. Similarly, in this case, the court issued an order of protection with a duration of two months and eight days after Chelsea requested "a brief order to hold things together until we can get in front of [the family court]." In *Sherwin*, we reminded the court and the parties " '[o]btaining an order of protection is not the proper procedure for resolving child custody or visitation issues.' " *Sherwin*, 2023 IL App (4th) 220904-U, ¶ 73 (quoting *Radke ex rel. Radke v.*

*Radke*, 349 Ill. App. 3d 264, 269, 812 N.E.2d 9, 13 (2004)). Rather, " '[t]hose issues should be resolved under the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.* (West 20[20])).' " *Sherwin*, 2023 IL App (4th) 220904-U, ¶ 73. We reiterate this reminder here.

¶ 36        This case also involves an additional element of forum shopping. The process used in this case, involving filing multiple petitions seeking the same relief and the entry of conflicting orders in neighboring counties, may result in reduced respect for the judicial system. See *People ex rel. East Side Levee & Sanitary District v. Madison County Levee & Sanitary District*, 54 Ill. 2d 442, 445, 298 N.E.2d 177, 179 (1973) (holding Madison County circuit court's acceptance of jurisdiction and issuance of orders conflicting with orders of St. Clair County circuit court could "only serve to diminish public respect for the judicial system of this State"); *People ex rel. Phillips Petroleum Co. v. Gitchoff*, 65 Ill. 2d 249, 257, 357 N.E.2d 534, 538 (1976) ("[T]he pendency before different judges of separate suits involving identical parties and issues is incompatible with the orderly and efficient administration of justice."). Thus, we also caution the trial court and the parties against the use of this practice.

¶ 37                        E. Remaining Arguments on Appeal

¶ 38        We need not address Nicholas's remaining arguments seeking reversal of the trial court's judgment in this case because we reverse the judgment based on the court's failure to grant Nicholas's motion to dismiss the petition under section 2-619(a)(3).

¶ 39                              III. CONCLUSION

¶ 40        For the reasons stated, we reverse the trial court's judgment and vacate the order of protection entered in this case.

¶ 41        Reversed and vacated.